## CHANDLER V. COLCORD.

### [*Opinion Filed February 18, 1893*]

1. PROBATE COURT—*Concurrent Jurisdition*—Act Dec. 25, 1890, ʰy which the territorial legislature conferred on the probate court concurrent jurisdiction with the district court in certain cases, and regulated the right of appeal, was ratified by congress, (Supp. Rev. St. U. S. p. 929,) in respect to jurisdiction. *Held*, that, as such ratification conferred on the probate court concurrent jurisdiction with the district court, the exercise of such jurisdiction must be determined by the code of civil proceduie, which provides for the procedure both before and after judgment, including the right of appeal to the supreme court, and the manner of taking and prosecuting such appeal; and hence the supreme court may entertain an appeal from the probate court in a case where in has concurrent jurisdiction with the district court.

2. AFFIDAVIT FOR CONTINUANCE—*Effect of Admitting Same.*—Where a party opposing a continuance asked for on ground of the absence of a material witness, admits that the witness, if present, would testify as stated in the moving affidavit, the trial court, under the express provisions of St. § 4449, commits no error in refusing the continuance.

3. CODE CIVIL PROCEDURE--*Probate Court.*--Code Civil Proc. Art. 18, §§ 5, 17, which prescribe the method of summoning jurors in the district court when the regular panel is exhausted, apply to the probate court, in a case of which it has concurrent jurisdiction with the district court; and a special jury may be summoned in such a case, tried at a term in which there was no regular panel.

4. REPLEVIN—*Demand and Refusal.*—A bona fide purchaser of property may, without a prior demand and refusal, maintain replevin against a sheriff for taking it out of his possession on execution against the seller.

5. PERSON IN POSSESSION—*Claim of Property.*—A claim by a person in possession of property, that he is the owner, made on its seizure under execution as the pioperty of a third person, is not equivalent to a demand for a return of the property, so as to enable him to maintain replevin in a case where demand is necessary.

6. FRAUDULENT VENDOR—*Sale or Mortgage.*—Fraudulent intent on the part of a vendor or mortgagor to hinder, delay, and defraud creditors is not, of itself, sufficient to defeat the sale or mortgage, but it is essential that the vendee or mortgagee should participate in the design.

7. MORTGAGEE IN POSSESSION—*Instruction Misleading.*--Where a per-

son is in possession of a stock of goods, not only as mortgagee, but as vendee, an instruction as to the fraudulent character of the mortgage, ignoring the sale, is misleading.

8. DISTRICT CLERK—*Execution from Probate Court.*—The clerk of the district court has no power to issue execution on a judgment of the probate court, rendered in a case of which it has concurrent jurisdiction with the district court, but the execution should issue out of the probate court.

9. JUDGMENT CREDITOR—*Execution Against Property.*—To enable a creditor to assail the validity of a chattel mortgage executed by his debtor, he must not only obtain a judgment, but also a valid execution against the property of the debtor.

10. REPLEVIN—*Form of Verdict.*—In replevin, where the property is delivered to plaintiff, a verdict in defendant's favor which fails to fix the value of defendant's interest in the property is defective, as it is impossible for the court to render the alternative judgment provided for in St. p. 848, § 9.

*Appeal from the Probate Court of Oklahoma County.*

Replevin by Robert Y. Chandler against C. F. Colcord. From a judgment in defendant's favor, plaintiff appeals. Reversed.

*J. Milton,* for appellant.

*Sweet & Dean,* for appellee.

The opinion of the court was delivered by

GREEN C. J. On the 25th day of July, 1892, appellant filed his amended complaint in an action of replevin in the probate court of Oklahoma county, against appellee, for the recovery of a stock of liquors and bar and saloon furniture, of the alleged value of eight hundred and seventy five dollars, of which appellant avered he was the owner and entitled to the immediate possession, and that said goods and chattels had been wrongfully taken and were unlawfully detained by appellee from applicant, to the damage of appellant of one hundred and twenty-five dollars. To this amended complaint appellee appeared and answered by filing a general denial.

The property described in the complaint, by virtue of the writ of replevin, was taken from the possession of appellee, as sheriff of Oklahoma county, and who at the time, was holding it on an execution in his hands against the goods and chattels of one David M. Chandler, and was delivered to appellant, as appellee refused to give the necessary bond and retain possession of the property.

On the 2d day of August, 1892, it being one of the judicial days of the July term of said court, on demand of appellant, the cause was tried by a jury, which resulted in a verdict in favor of appellee and against appellant. Motions for a new trial, and to set aside the verdict of the jury for irregularities, were filed by appellant and were overruled by the court, and the court rendered a judgment on the verdict of the jury in favor of appellee and against appellant for a return of the property and costs of suit, to all of which appellant excepted and brings the record into this court by appeal, and assigns numerous errors as grounds for a reversal of the judgment.

Before proceeding to a discussion of the errors assigned, it becomes necessary to dispose of a question affecting jurisdiction of this court to entertain an appeal from a judgment of the probate court, as appellee has moved a dismissal of the appeal on the ground that no appeal will lie from a judgment of the probate court to the supreme court of the Territory.

The legislative assembly, in view of the fact that the probate court, under the organic act, could exercise probate jurisdiction only, passed an act entitled, ''An Act Extending the Jurisdiction of the Probate Court in Civil and Criminal Cases and Prescribing the Procedure Therein, and Providing for Appeals Therefrom,'' which act took effect on the 25th day of December, 1890, and contains eight sections in all, which are as follows:

"SEC. 1  Probate courts in their respective counties shall in addition to the powers conferred upon them by the probate chapter of the Territory, have and exercise the ordinary powers and jurisdiction of justices of the peace and shall in civil cases have concurrent jurisdiction with the district court in all civil cases in any sum not exceeding one thousand dollars exclusive of costs, and in actions of replevin where the appraised value of the property does not exceed that sum, and the provisions of the chapter on civil procedure relative to justices of the peace and to practice and proceedings in the district court shall apply to the proceedings in all civil actions, prosecuted before said probate courts: *Provided,* That probate courts shall not have jurisdiction:

"First.  In any action for malicious prosecution.

"Second.  In any action against officers for misconduct in office, except where like proceedings can be had before justices of the peace.

"Third.  In actions for slander and libel.

"Fourth.  In actions upon contracts for sale of real estate.

"Fifth.  In any matter wherein the title or boundaries of land may be in dispute, nor to order or decree the sale or partition of real estate.

"SEC. 2.  In all cases commenced in said probate courts wherein the sum exceeds the jurisdiction of justices of the peace the pleading,and practice and proceedings in said court, both before and after judgment, shall be governed by the chapter on civil procedure of the Territory governing pleading and practice and proceedings in the district court.  In all cases commenced in said probate courts that are within the jurisdiction of justices courts the practice and proceedings and pleadings both before and after judgment provided for in the justice's procedure of the Territory shall be applicable to the practice pleadings and proceedings of said probate courts.

"SEC. 3.  The probate judge shall on the first day of each term prepare a calendar of the cases standing for trial at said term, placing the causes on said calendar in the order in which the same are numbered on

the docket and setting the cases for trial in such order upon convenient days during said term; and the provisions of the chapter on civil procedure of the Territory relative to the docket in district courts shall so far as they are applicable apply to said calendar.

"SEC. 4. The probate courts of the Territory shall be deemed to be always open for the filing of papers and the issuance of processes in civil actions and for the purpose of taking and entering judgments by confession and for the purpose of trying all actions commenced therein that are triable under the justice's procedure of the Territory and for all probate business of their respective counties.

"SEC. 5. Appeals from the final judgment of said probate courts shall be allowed and taken to the supreme court of this Territory in the same manner as (from) the district court and with like effect when only questions of law are involved in the appeal. If questions of fact are to be retried in the appellate court the appeals shall be taken to the district court of the county in manner and form as appeals are taken from judgments of justices of the peace.

"SEC. 6. In all cases pending or to be brought in the probate court the probate judge shall have power and jurisdiction to allow injunctions, mandates, writs of prohibition and to make all other and further orders as may be necessary in cases pending in said court, and to hear and determine motions made to vacate or modify the same, and generally to do as to actions pending in said courts any and all acts which the judges of the district courts are by law authorized to do. He may also, in case of the absence of the district judge from his county, allow injunctions in matters about to be brought or pending in the district court, but he shall not have power to vacate or modify the same. He shall have power to allow writs of *habeas corpus* in all cases provided by law and to hear and determine the same.

"SEC. 7. All criminal actions prosecuted in the probate court shall be brought in the same manner as similar actions in the justices courts; or shall be upon information of the county attorney based upon a sworn

complaint and shall be under his direction and control; and warrants shall issue the same as in justices courts; *Provided,* If the complaint or information be adjudged defective or insufficient it may be amended to any extent and sworn to until it is sufficient, and if the evidence fails to prove the crime charged, but tends to prove any other crime the information may be amended to charge the crime which the evidence tends to prove; and if that be a felony the trial shall be suspended and the accused shall be proceeded against by preliminary examination and bound over or discharged as the court shall deem just under the evidence. If the information or complaint be amended, the court shall see that the defendant is not prejudiced thereby and if justice requires it shall grant to the accused time to prepare his defense to the information or complaint as amended.

"SEC. 8. The probate judges for any services performed by or in any matter within the jurisdiction of a justice of the peace shall be allowed the same fees as are allowed by law to justices of the peace for like services and in all civil actions triable in a probate court of which a justice of the peace has no jurisdiction, the probate judge shall be entitled to receive the same fees as are allowed to a clerk of the district court for like services and shall be allowed further fees as follows: For each day's attendance upon trial of a case after the first day, two dollars; taking and approving bail bond, twenty-five cents; for entering voluntary appearance of defendant, twenty-five cents; commission on money collected on judgments without execution, one per cent on the amount.

"This act shall be in force and take effect from and after its adoption and legalization by act of Congress."

As the legislative assembly had no power to extend the jurisdiction of the probate court, as that jurisdiction was defined and limited by the organic act, it became necessary for congress to ratify the act of the legislative assembly, in order to vitalize it and give it effect, and congress accordingly enacted the following *proviso:*

"*Provided,* That in addition to the *jurisdiction*

granted to the probate courts and the judges thereof in
Oklahoma Territory by legislative enactments, which
enactments are hereby ratified, the probate judges of
said Territory are hereby granted such jurisdiction in
townsite matters and under such regulations as are pro-
vided by the laws of the State of Kansas." (Supp. R.
S. p. 929.)

It is contended that the act of congress only ratifies
so much of the act of the legislative assembly *as extends
the jurisdiction* of the probate court in civil and crim-
inal cases; and that those parts of the act which pro-
vide for the procedure and appeals are not ratified, and,
consequently, not in force. It is, also, contended that
the provisions of the act, which gives the right of appeal
from a judgment of the probate court to the supreme
court, extends the jurisdiction of the supreme court,
and is not ratified by the act of congress and is not in
force.

The act of congress is a remedial statute, and should
be liberally construed to effect the purpose intended;
and it is the opinion of the writer that congress in-
tended to, and did, ratify the whole act of the legisla-
tive assembly, as well the provisions extending the jur-
isdiction of the probate court, as the provisions which
furnish the procedure and give the appeal.

But if the construction of the act of Congress con-
tended for be adopted, that it ratifies the act of the leg-
islative assembly only so far as it extends the jurisdic-
tion of the probate court, how does such construction
affect the right of appeal from the probate court to this
court, in a civil action in which the amount in contro-
versy does not exceed the sum of one thousand dollars,
and does exceed the jurisdiction of a justice of the
peace, and in an action of replevin which the appraised
value of the property does not exceed that sum?

The jurisdictional clause in § 1 of the act of the legis-
lative assembly, and which it is conceded is ratified by
the act of Congress, provides:

"Probate courts, in their respective counties, shall, in addition to the powers conferred upon them by the probate chapter of the Territory, have and exercise the ordinary powers and jurisdiction of justices of the peace, and shall in civil cases, have *concurrent jurisdiction* with the district court, in all civil cases in any sum not exceeding one thousand dollars, exclusive of costs, and in actions of replevin where the appraised value of the property does not exceed that sum."

The law, then having conferred upon the probate court *concurrent jurisdiction* with the district court in actions of replevin in which the appraised value of the property does not exceed the sum of one thousand dollars, how is the probate court to proceed in the exercise of that jurisdiction? So far as it has *concurrent jurisdiction* with the district court it is of equal dignity with the district court, and is, *pro re nata*, a district court; and no reason is perceived why the provisions of the code of civil procedure should not apply to the probate court, when in the exercise of its *concurrent jurisdiction*.

The code of civil procedure provides for the commencement and prosecution of *all civil actions*, except such as are commenced and prosecuted before a justice of the peace; and it provides for the procedure both before and after judgment, including the right of appeal to the supreme court, and the manner of taking and prosecuting such appeal; and the probate court having · *concurrent jurisdiction* with the district court in certain *civil actions*, the provisions of that code are as applicable to the probate court in the exercise of that jurisdiction as they are to the district court. And it is a general principle of law, in the construction of legislative acts conferring jurisdiction, that where the end is required the appropriate means are given; for it were useless to extend the jurisdiction of the probate court if no means were provided for the exercise of that juris-

diction. The motion to dismiss the appeal will be overruled.

The first error assigned questions the action of the court in overruling appellant's motion for a postponement of the trial. A subpœna had been issued for Henry Huffman, a resident of Oklahoma county, and placed in the hands of the sheriff for service, but had not been returned at the time the cause was called for trial, and appellant, in support of a motion for a postponement, on the ground of the absence of the witness, filed an affidavit, setting out, at large, the facts which he believed the absent witness would testify to, and that he believed the facts to be true, and stating all other facts essential to the sufficiency of an affidavit for a postponement. Counsel for appellee, in order to avoid a postponement, consented that the witness would testify to the facts as true. which were stated in the affidavit, and thereupon the court overruled the motion, and the affidavit was read on the trial as the evidence of the absent witness.

The statute provides, in substance (Okla. Stat. § 4449) that, when an affidavit for a postponement of the trial is filed, on the ground of the absence of a material witness, and such affidavit is held sufficient by the court, the adverse party may consent that the witness, if present, would testify to the facts as true, which are stated in the affidavit, and that, in such case, the trial shall not be postponed on account of the absent witness. In this case such consent was given, and the facts stated in the affidavit were read, on the trial, as the evidence of the absent witness, and the court committed no error in overruling the motion.

The second error assigned challenges the legality of the selection of the jurors, who were impaneled and tried the cause in the court below. Appellant demanded a jury, and that it should be impaneled in the manner

provided by law for civil actions in the district court. There being no regular panel of jurors at that term, the court ordered and issued an *open venire* to the sheriff, who summoned from the body of the county the jurors who sat in the case, and who were impaneled and sworn, as a jury over the objections of appellant.

Section 5 of Art. 18 of the code of civil procedure, general § 4551, provides:

"In any civil action where the parties are entitled to a trial by jury, and either party shall demand such trial, the sheriff shall call a jury from the regular panel, except as hereinafter provided."

And § 7 of the same article, general § 4553, provides:

"The court shall have power, when the business thereof requires it, to order the impaneling of a special jury for the trial of any cause."

Following the § § quoted, *supra*, the statute provides for the impaneling of a struck jury, and then follows § 17 of the same article, general § 4563, which is as follows:

"When the regular panel is exhausted. or is insufficient from any cause, the sheriff shall call the bystanders, or fill the jury in such manner as the court may direct."

The record shows that this cause was regularly set for trial, on the 2d day of August, 1892, at the hour of 9 o'clock a. m., at which time both parties appeared, and appellant demanded a jury. There being no regular panel, and the business of the court being such as to require a jury, the court was empowered by the provisions of § 7, *supra*, to impanel a special jury for the trial of the cause. (*Wilson v. The State*, 42 Ind. 224.)

The provisions of § 17, *supra*, are also applicable. The regular panel was *insufficient* because there was no regular panel; and when the regular panel is insufficient from *any cause*, the sheriff shall call the bystanders, or fill the jury in such manner as the court may direct. In

this case it was done by issuing an open venire, and was done in *such manner as the court directed;* and the court did not err in overruling appellant's objections.

As to all the other errors assigned on the record, they may properly be considered under two of the assignments: *First,* the court erred in overruling appellant's motion for a new trial, and *second,* the court erred in overruling appellant's motion to set aside the verdict.

The claim of appellant to the property in controversy was, by virtue of a chattel mortgage, executed by David M. Chandler, to secure an alleged indebtedness of $875; and, also, by virtue of an alleged absolute sale and delivery of possession, on the 7th day of July, 1892, in payment of said mortgage debt, and for the further consideration of $125.00 in cash, paid by appellant, at that time, making an aggregate consideration of $1,000.

The claim of appellee was by virtue of a writ of execution, issued on the 22d day of July, 1892, by Will H. Clark, as clerk of the district court of Oklahoma county to the sheriff of said county, on a judgment of the probate court of said county, in favor of Baldridge Bros., and against the goods and chattels of David M. Chandler; and upon which execution the property in controversy had been seized as the property of David M. Chandler, and was held by appellee as sheriff of said county. And the theory of the defense was, that the mortgage and sale from David M. Chandler to appellant were made, if made at all, for the purpose of hindering, delaying and defrauding the creditors of David M. Chandler, and were void as against the execution upon which the property was seized.

At the instance of appellant, the court gave the following instructions:

"*First.* The jury are instructed, that all transactions are presumed in law to be honest, until the con-

trary is proven, and that fraud is never to be presumed.

"*Second.* That the making of a mortgage by a debtor to secure a creditor, is valid against all existing creditors, from the time it is filed for record, until shown to be made to hinder, delay or defraud creditors.

"*Third.* That a debtor has a right to prefer one creditor to another, and mortgage or sell, his property to pay the preferred creditor.

"*Fourth.* That the taking of possession of mortgaged property by the mortgagee, under his mortgage, has the same effect, as to all creditors and subsequent purchasers, as the filing of the same for record."

And the court refused to give the following instructions for appellant, to which appellant at the time excepted:

"*Fifth.* That if the jury believe, from the evidence that the property seized by the sheriff was, when seized, the property of the plaintiff, then they are instructed, that no demand was necessary before bringing the action of replevin.

"*Sixth.* That the claim made by the plaintiff, at the time the property was seized by the sheriff, that the plaintiff was the owner of the property, was sufficient without further demand."

And the court, at the instance of appellee, gave the following instructions:

"*First.* The court further instructs the jury, that when a transfer of property is made, with intent, on the part of the person making it, to hinder, delay or defraud his creditors, and the party to whom the transfer is made has knowledge of the facts and circumstances, from which such fraudulent intent might reasonably and naturally be inferred by an ordinarily cautious person, then such transfer is fraudulent and void as against the rights of the creditors.

"*Second.* The court further instructs the jury, that a chattel mortgage of a stock of goods, used in the way of retail trade, and where the mortgagor is allowed to

continue in possession of the property, and to sell the goods in the usual course of trade, is in law fraudulent and void as against the creditors of the mortgagor, no matter whether the parties intended an actual fraud or not.

"*Third.* The court further instructs the jury, that, in determining the question whether the mortgage in this care was made in good faith, the jury should take into consideration all the facts and circumstances proved on the trial; and if the jury believe, from all of the evidence in the case, that the mortgage was not made in good faith, or for a valuable consideration, but was made for the purpose of covering up the property of the mortgagor, so as to keep it from his creditors, then these facts would render the mortgage fraudulent and void as to third persons and creditors having claims, or liens on the property covered by the mortgage.

"*Fourth.* The jury are instructed that, if mortgaged chattels, in the possession of the mortgagor, are levied on by an execution against him, replevin will not lie, on behalf of the mortgagee, against the officer, to recover possession of the property."

And to the giving of all which instructions appellant, at the time, excepted.

In order to determine the correctness of the instructions, which were given and refused, they must be considered with reference to the facts of the case as disclosed by the evidence. Appellant relied for a recovery not only on his mortgage, as a mortgagee in possession, but also on a sale and delivery of possession, made to him by David M. Chandler on the 7th day of July, 1892, and claiming that he was in the actual possession of the property, at the time the execution was levied, and that the property was taken out of his possession by appellee as sheriff. Upon the theory of the case, that appellant was the owner of the property, and in possession of it, and that it was seized on the execution and taken out of his possession, the fifth instruction, which

was asked by appellant and refused by the court, should
have been given, and the court erred in refusing it.

The rule of law is elementary, that, when the taking
of property is wrongful, and the property is taken from
the possession of the owner, he may maintain replevin
in the *cepit* for the recovery of the property, without a
demand and refusal.   If the property in controversy
was the property of appellant, and in his possession,
the execution against the goods and chattels of David
M. Chandler created no lien on the property, and the
act of the sheriff in seizing the property on that execu-
tion was wrongful, and no demand and refusal were
necessary before bringing the action.

The court committed no error in refusing appellant's
sixth instruction.   The fact, if true, that appellant
claimed the property at the time it was seized by ap-
pellee on the execution, was not such a demand and
refusal as the law requires in order to maintain an action
of replevin in the *detinet*.   Where a demand is neces-
sary, there must be a distinct demand for possession,
and a refusal to deliver possession on the making of
such demand.

As to the instructions which appear to have been
given at the instance of appellee, the *first* and *third*
were erroneous and should not have been given.   A
fraudulent intent on the part of a vendor, or mortgagor,
to hinder, delay and defraud his creditors, is not of it-
self sufficient to defeat the sale, or mortgage.   It is
essential to that end that the vendee. or mortgagee,
should participate in that design.   The fraudulent in-
tent must be mutual.   (*Mixsell v. Williamson*, 35 Ill.,
529; *Herkelrath v. Stookey*, 63 *Id.*, 486.)

The *second* instruction of appellee's series, which was
given by the court, states a correct abstract proposition
of law, but should have been modified in order to make
18

it applicable to appellant's theory of the case; and in the form, as given, it was calculated to mislead the jury. If the mortgagor was permitted to remain in possession of the stock of liquors, after the execution of the mortgage, and to sell the same in the usual course of retail trade, and, while he was so in possession, the execution went into the hands of the sheriff and became a lien on the stock, then the instruction would have been correct and applicable, so far as the stock of liquors was concerned.    But the mortgage included property other than the stock of liquors, and appellant's claim was based not only on possession as mortgagee, but on possession as vendee, before the execution was issued. A chattel mortgage on a stock in trade, and on other property, may be void as to the stock in trade, for the reasons stated in the instruction, and valid as to the other property.    (*Barnet v. Fergus*, 51 Ill. 352.)

As to whether appellee's *fourth* instruction is erroneous or not, must depend upon the conditions in the mortgage; and, as the mortgage is not set out in the record, we have no means of determining the question.

But there is still another ground appearing in the record why appellee's *first*, *second* and *third* instructions should not have been given.    Appellee's defense rested entirely upon the execution, by virtue of which he seized and held the property; and, unless that execution was valid, he had no right to show, or to contend, that the mortgage and sale were made with the intent to hinder, delay and defraud the creditors of David. M. Chandler. ·

The execution upon which the property was seized and held by appellee, is in the following form:

"TERRITORY OF OKLAHOMA, ⎫
      COUNTY OF OKLAHOMA, ⎬ S S.
                                                 ⎭

*The Territory of Oklahoma, to the sheriff of said county, Greeting.*

We command you, C. F. Colcord, sheriff, that you

cause to be levied of the goods and chattels, in your bailiwick, of David M. Chandler, the sum of two hundred and fifty-four and 97—100 dollars, which by the judgment of the probate court of said county, at the July term 1892, wherein Baldrige Brothers obtained a judgment against the said David M. Chandler, with interest on the sum, from the 22d day of July, 1892, until paid, and also the further sum of $2.95, the costs of increase on said judgment, and the accruing costs; and, for want of goods and chattels, that you cause the same to be made and levied of the lands and tenements, in your bailiwick, of the said David M. Chandler, and have the money before the district court, within 180 days hereof, to render unto the said Baldridge Bros., and have you then and there this writ.

Witness my hand and the seal of the District Court, at Oklahoma City, this 22d day of July, 1892.

WILL H. CLARK,
Clerk of District Court."

There is no provisions of law, which authorizes and empowers the clerk of the district court to issue, attest, and seal a writ of execution on a judgment of the probate court, such as the one described in this execution; and an execution so issued is absolutely void, and creates no lein on property in the hands of the sheriff. In all cases in which the probate court has concurrent jurisdiction with the district court, it must execute its own judgments, by issuing writs of execution out of, and under the seal of that court.

The law is well settled, that a creditior, who has no lein on the property covered by a chattel mortgage, cannot be permitted to assail the validity of the mortgage, on the ground that it was made with intent to hinder, delay, and defraud the creditors of the mortgagors. In order to do so, he must not only obtain a judgment, but must have a valied execution against the property of the mortgagor. (*Ellingboe v. Brakken*, 36 Minn. 156; *Thompson v. Van Vechten*, 27 N. Y. 568, 582; *Fearey v. Cummings*, 41 Mich. 376; *Savings Bank v.*

*Bates,* 120 U. S. 556; Cobbey ôn Chattel Mortgages,
§ 774.)

As appellee was in no position to question the vali-
dity of the chattel mortgage, o r the alleged sale of the
property to appellant, on the ground that they were
made with intent to hinder, delay, and defraud the
creditors of David M. Chandler, the *first, second* and
*third* instructions, which were given at the instance of
appellee, were not applicable to any issue properly in
the case, and must have had a controlling influence
with the jury; and for the errors of law occurring at
the trial and excepted to by appellant, the verdict
should have been set aside and a new trial granted;
and the court erred in overruling appellants motion
for a new trial.

The only remaining error assigned, which it is im-
portant to notice, is the overruling of appellant's mo-
tion to set aside the verdict, on the ground that the
jury failed to assess and return the value of appellee's
interest in the property. Without such finding the ver-
dict was informal and defective, as it was impossible
for the court to render the alternative judgment which
is provided for by the statute. (Okla. Stat. p. 848, § 9.)

The interest of appellee in the property was the amount
due on the execution, and that amount should have
been found by the jury as the value of appellee's inter-
est in the property, and the judgment should have been
for the return of the property, or the payment of that
amount. *(Shahan v. Smith,* 38 Kans. 474; *Fowler v.
Hoffman,* 31 Mich. 221; *Russell v. Butterfield,* 21
Wend. 300.)

The probate court erred in overruling appellant's
motion to set aside the verdict; and the judgment on
the verdict, that appellant return the property or pay
the value of the property to appellee—no value or
amount, being fixed—is erroneous and should be re-
versed.

The judgment of the probate court is reversed with costs, and the cause remanded, with directions to the court below to award a *venire facias de novo*.

Reversed and remanded.

All the Justices concurring.