## Richmond.

HUTCHESON v. GRUBBS.

FEBRUARY 19th, 1885.

| 80 | 251 |
| 90 | 339 |
| 80 | 251 |
| 92 | 706 |
| 80 | 251 |
| 100 | 121 |
| 80 | 251 |
| 102 | 557 |

1. JUDGMENTS—*Decrees—Judgment creditors.*—By Code 1873, chapter 182, sections 1 and 2, a decree for specific property or requiring payment of money, has the effect of a judgment, and persons entitled thereto are judgment creditors.

2. PRACTICE IN CHANCERY—*Statute of limitations.*—Courts of equity follow the law as respects the statute of limitations. If a legal claim, barred at law, be asserted in equity, it is equally barred there.

3. JUDGMENT LIENS—*Enforcement in equity.*—Lien of judgment is a creature of statute, and cannot be enforced in equity after it ceases to be enforceable at law.

4. IDEM—*Construction of statutes.*—The language of the statute, Code 1873, chapter 182, section 9 : "The lien of a judgment may always be enforced in a court of equity," implies only a purpose to confer jurisdiction on courts of equity to enforce the lien, whether the remedies at law are adequate or not. ·

Appeal from decree of circuit court of Mecklenburg county, entered by the judge thereof, in vacation, on 26th March, 1883, in two chancery suits, in one whereof Rebecca A. Grubbs' administrator was plaintiff, and Charles S. Hutcheson's executrix and others were defendants, and in the other whereof said C. S. Hutcheson and R. M. Hutcheson, commissioners, were plaintiffs, and John W. Richardson was defendant.

The object of the suits was to enforce on certain land the liens of certain decrees which were rendered in 1863, for the payment of money, whereon no executions were ever issued. The defendants plead the statute of limitations. The decree

being in favor of the plaintiffs, the defendants obtained an appeal to this court.

*W. W. Henry* and *Finch & Atkins,* for the appellants.

*Homes & Faulkner* and *Thos. N. Page,* for the appellees.

LEWIS, P., delivered the opinion of the court.

In November, 1860, soon after the death of the widow of Joseph Hutcheson, deceased, a friendly suit in equity was instituted in the county court of Mecklenburg county, to which the heirs and distributees of the said Joseph Hutcheson were parties, to sell the land and slaves held by the widow in her lifetime as dower, and to distribute the proceeds among those entitled thereto. Sales of the land and slaves were made by commissioners of the court appointed for the purpose, who duly reported their proceedings to the court. Of the eleven parties in interest, six resided in the county of Mecklenburg; the others were non-residents, residing in the States of Tennessee and Arkansas. At the January term, 1863, a decree was entered directing the commissioners to pay to the distributees the sums ascertained to be due them respectively; among them to Mrs. Rebecca A. Brown, afterwards Mrs. Rebecca A. Grubbs, a daughter of Joseph Hutcheson, and a non-resident, the sums of $557.31 and $431.57, with interest on each sum from that time until paid. It is admitted that nothing has ever been paid on account of this decree, either to Mrs. Grubbs in her lifetime, or to her personal representive since her death. But it is claimed by the commissioners that the fund, or such part of it as was payable under the decree to the non-resident parties, was afterwards invested in Confederate securities under an order to that effect granted by a circuit judge, pursuant to the act of assembly of March 5, 1863.

To September rules, 1880, of the circuit court of Mecklen-

burg county, the present suit was brought by Mrs. Grubbs against the said commissioners, in which she claimed a lien on the real estate of the defendants by virtue of the two judgments by decree in her favor rendered by the said county court, at its January term, 1863, as aforesaid. And the prayer of the bill was that the real estate be sold to satisfy the said judgments. The defendants pleaded the statute of limitations, but the plea was overruled, and at the hearing a decree was entered in the plaintiff's favor, from which decree the defendants appealed.

The statute, Code 1873, chapter 182, section 1, provides that "a decree for land or specific personal property, and a decree or order requiring the payment of money, shall have the effect of a judgment for such land, property, or money, and be embraced in the word 'judgment,'" etc. And by section 2 it is provided that "the persons entitled to the benefit of any decree or order requiring the payment of money shall be deemed judgment creditors, although the money be required to be paid into a court, or a bank or other place of deposit. In such case, an execution on the decree or order shall make such recital thereof, and of the parties to it, as may be necessary to designate the case; and if a time be specified in the decree or order within which the payment is to be made, the execution shall not issue until the expiration of that time." It is very clear, therefore, that under the decree of the county court Mrs. Grubbs became a judgment creditor of the defendants; and the question is, whether, inasmuch as no execution has ever been issued on that decree, the right to enforce the lien thereof in a court of equity was barred at the time the present suit was brought. It is undisputed that all proceedings to enforce the judgment at law are barred by the statute. Then, does the lien, which is but an incident of the judgment, remain to be enforced in a court of equity? A brief reference to the law respecting judgment liens on real estate and the means of enforcing them, as it existed prior to the revisal of 1849, is essential to an intelligent determination of this question.

At common law, except for debts due the king, the lands of the debtor were not liable to the satisfaction of a judgment against him, and consequently no lien thereon was acquired by a judgment. This was in accordance with the policy of the feudal law introduced into England after the Conquest, which did not permit the feudatory to charge, or to be deprived of, his lands for his debts, lest thereby he should be disabled from performing his stipulated military service, and which, moreover, forbid the alienation of a feud without the lord's consent. The goods and chattels of the debtor, therefore, and the annual profits of his lands, as they arose, were the only funds allotted for the payment of his debts. This continued to be the law until the passage of the statute Westm. 2, 13 Edward I, by which, in the interest of trade and commerce, the writ of *elegit* was for the first time provided for. By that statute the judgment creditor was given his election to sue out a writ of *fi. fa.* against the goods and chattels of the defendant, or else a writ commanding the sheriff to deliver to him all the chattels of the defendant (except oxen and beasts of the plough), and a *moiety* of his lands until the debt should be levied by a reasonable price or extent. When the creditor chose the latter alternative, his election was entered on the roll, and hence the writ was denominated an *elegit*, and the interest which the creditor acquired in the lands by virtue of the judgment and writ was known as an estate by *elegit*. This statute was substantially adopted in Virginia at an early day, and in consequence of this right to subject a *moiety* of the defendant's lands, the courts held that a *lien* was acquired by the judgment, which extended to all the defendant's lands within the State, and which was superior to the claims of subsequent purchasers, though for valuable consideration and without notice. 1 Lom. Dig., marg. page 284 *et seq.*; 2 Minor's Insts. 263, 270; *Borst* v. *Nalle*, 28 Gratt. 423; *Price* v. *Thrash*, 30 Id. 515. The lien thus acquired was a *legal* lien (*Leake* v. *Ferguson*, 2 Gratt. 420), and remained so long as the capacity to sue out an *elegit* continued, whether the

writ was sued out or not. *United States* v. *Morrison*, 4 Pet. 124; *Taylor* v. *Spindle*, 2 Gratt. 44. And, as was said in *Borst* v. *Nalle*, whenever this capacity finally ceased, "*the lien* which was dependent upon it was extinguished."

The law also provided the more comprehensive writ of *ca. sa.*, which extended to all the lands of the defendant, and by the levy of which the creditor acquired an inchoate lien, which became consummate upon the defendant's taking the oath of insolvency. If the latter died in execution, the lien was lost. *Stuart* v. *Hamilton's ex'ors*, 8 Leigh 503.

The time, however, within which executions and writs of *scire facias* could be issued on judgments was prescribed by statute; and in *Flemings ex'or* v. *Dunlop*, 4 Leigh 338, it was said by Judge Carr that where no execution issued within the prescribed time *the judgment was annihilated*.

The law having thus provided legal remedies for the enforcement of judgments, it was only in cases where those remedies were inadequate, as where the estate sought to be charged was an equitable estate, or where the rents and profits of the lands would not pay the debt within a reasonable time, that equity would take jurisdiction and decree a sale. But in no case does it appear ever to have been even intimated that equity would afford relief where the right to revive or proceed under the judgment at law was lost.

Such was the law at the time of the revision in 1849. And the legislature cannot be presumed to have intended to alter it further than its intention to do so is manifested by the express language employed or by necessary implication therefrom. By that revision the writ of *ca. sa.* was abolished, and the lien of the judgment was expressly given on all the real estate of or to which the defendant is possessed or entitled. The lien of the *fi. fa.* was enlarged, and the operation of the *elegit* (which, however, is now abolished) was extended so as to embrace, not a *moiety* only, but all the debtor's real estate. And it was further provided that "the lien of a judgment may always be enforced

in a court of equity." Code 1849, chapter 186, section 9; Code 1873, chapter 182, section 9.

It will thus be seen that the judgment creditor was given the choice, either to proceed at law under the enlarged writ of *elegit* to enforce his judgment out of the whole real estate of the defendant, or to proceed at once in a court of equity, in which by the statute he is entitled to a decree for *the sale* of the lands, if the rents and profits thereof appear insufficient to pay the judgment in five years. It is undeniable that, prior to the abolition of the writ of *elegit*, in 1872, if the creditor chose to proceed by *elegit*, he must have• done so within the time prescribed by the statute. The statute provides that, "on a judgment, execution may be issued within a year; and a *scire facias* or action may be brought within ten years from the date of the judgment; and where execution issues within the year, other executions may be issued or a *scire facias* or action may be brought within ten years from the return day of an execution, on which there is no return by an officer, or within twenty years from the return day of an execution, on which there is such return; except," etc. Code 1849, chapter 186, section 12; Code 1873, chapter 182, section 12. And, by the following section it is provided that, "no execution shall issue, nor any *scire facias* or action be brought, on a judgment in this State, other than for the commonwealth, after the time prescribed by the preceding section, except," etc. Id. section 13.

The legislature having thus carefully prescribed the time within which the remedies at law for the enforcement of a judgment may be resorted to, could it have intended to leave the remedy in point of time unlimited in a court of equity? From what has been said, it is plain that to hold that it did, would be a most unreasonable construction, not warranted by the terms of the statute, and opposed to the manifest policy of the legislature. Surely, if such an anomaly as the right to enforce an incident—namely, the lien—of the judgment after the judgment itself is "annihilated" was contemplated, the in-

tention would have been expressed in terms too plain to be misunderstood. It is true, "the lien of a judgment may always be enforced in a court of equity." But this language, fairly construed, would seem to indicate nothing more than a purpose to confer jurisdiction on courts of equity to enforce the lien, whether the remedies at law are adequate or not. *Price* v. *Thrash*, 30 Gratt. 515. Moreover, the lien, as we have seen, is a legal lien, and, as "equity follows the law," the construction contended for by the appellee must be rejected. In *Hovenden* v. *Lord Annesley*, 2 Sch. & Lef. 607, 630, Lord Redesdale, in delivering judgment, said: "I think courts of equity are bound to yield obedience to the statute of limitations upon all legal titles and legal demands, and cannot act contrary to the spirit of its provisions. I think the statute must be taken virtually to include courts of equity; for when the legislature by statute limited the proceedings at law in certain cases, and provided no express limitations for proceedings in equity, it must be taken to have contemplated that equity followed the law, and therefore, it must be taken to have virtually enacted in the same cases a limitation for courts of equity also." In *Rowe* v. *Bently*, 29 Gratt. 756, Judge Burks in delivering the opinion, said: "The general rule undoubtedly is, that in the application of statutes of limitations equity follows the law, and wherever a demand would be barred at law, an equitable demand of the like character will be barred in equity. The bar is applied by analogy, or, according to some authorities, by obedience to the statutory enactment; or, in other words, after a bar has been fixed by statute to the legal remedy, the remedy in a court of equity has, in analogous cases, been confined to the same period;" citing *Choldmondely* v. *Clinton*, 2 Jac. & Walk. Ch. R. 1; *Kane* v. *Bloodgood*, 7 John. Chy. 90; 1 Call. 419, 428. And in *Cole's adm'r* v. *Ballard*, 78 Va. 139, Judge Fauntleroy, speaking for the court, said: "No principle is better established, or more uniformly acted on in courts of equity, than that in respect to the statute of limitations, equity follows the law,

that is to say, if a legal demand be asserted in equity, which at law is barred by statute, it is equally barred in a court of equity."

It is needless to multiply words and authorities upon a proposition, which we deem too plain to admit of doubt.   Our conclusion, therefore, is that the lien of a judgment is a legal lien, conferred by the express terms of the statute, though enforceable in equity, and ceases with the life of the judgment upon which it is founded.   The subject was ably and elaborately considered by the Supreme Court of Appeals of West Virginia, in the recent case of *Werdenbaugh* v. *Reid*, 20 W. Va. 588, and the same conclusion reached.

It only remains to say, that while the general rule in equity is not to apply the bar of statutes of limitation in suits to enforce equitable demands against trustees and other fiduciaries, (1 Pom. Eq. section 419; 1 Story's Eq. section 529), this rule has no application where the demands are merged in a judgment, which as such is sought to be enforced, as in the present case.   This proposition, however, requires no discussion, as we understand it to be conceded by the counsel for appellee.

DECREE REVERSED.