JOHN G. MILLER & CO., *et al.* v. DRURY L. MELONE *et al.*

(Filed September 4, 1901.)

CREDITORS BILL—Petition Constitutes, When. A petition which alleges that the plaintiffs have recovered judgment against certain of the defendants, which judgment is in whole or in part unsatisfied, and unpaid, and which alleges that a sale of certain goods from such defendants to other defendants in said petition named, was in fraud of the rights of the plaintiff, and which asks that such other defendants be declared to be creditors of their co-defendant, and asks to have such other defendants render an accounting for the goods so conveyed to them by their co-defendant, and asks that the proceeds of said sale be applied to the satisfaction of the judgment of the plaintiffs, and for further relief asks that certain notes and securities, held by certain other defendants named in said petition, be declared to be the property of the defendants against whom plaintiffs hold judgment, and that the same be subject to the payment of said judgment, is in law a creditor's bill, and the plaintiff's right to the relief sought depends entirely upon the existence of a judgment. Such a proceeding is wholly ancillary to the judgment, and in aid of the execution issued thereon, for the purpose of reaching certain choses in action of the judgment debtor, and having the proceeds thereof applied in satisfaction of the plaintiff's judgment, and if pending such action the plaintiff's judgment becomes dormant by lapse of time, such action must fail.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Joseph Wisby* and *Cotteral & Hornor,* for plaintiffs in error.

*George S. Green* and *W. E. Earl,* for E. T. Patton and Company.

STATEMENT OF FACTS.

The complaint in this case was filed by John G. Miller *et al.,* on the 23rd day of February, 1892. It is alleged that

Drury L. Melone and Baker H. Melone, were partners, doing business as Melone Brothers, at Guthrie, Oklahoma Territory. That E. T. Patton and A. R. Brooks, are and were partners, doing business in the firm name and style of E. T. Patton & Company; that the National Bank of Guthrie is a corporation, duly and legally organized under the laws of the United States, and that Louis de Steiguer is president of said bank. It is further alleged that John G. Miller and Company are plaintiffs in this action, and the other plaintiffs are intervening claimants, being creditors of the Melone Brothers. It is further alleged that a judgment was rendered in the district court in favor of said plaintiffs against the said defendants, Melone Brothers, for the sum in the aggregate of $9,770.08, and costs. The various portions of said judgment, due to the various intervening claimant plaintiffs, is set forth in said petition. It is further alleged that said Melone Brothers were entirely insolvent, and unable to pay said judgment. The petition further alleges that the defendants, Melone Brothers, entered into a conspiracy with the defendant, de Steiguer, to purchase of the plaintiffs and other persons goods with the intention of not paying for the same, and that they did so purchase a large amount of goods. That in the months of September and October, 1891, the said Melone Brothers being then largely indebted to these plaintiffs, for goods sold and delivered prior to that time, by these plaintiffs to them, entered into a scheme and conspiracy, and fraudulent agreement with the said Louis de Steiguer, for them to purchase more goods on credit, and without an intention of paying therefor, and dispose of such as could be purchased, and the goods and merchandise already on hand, in order to defeat said plaintiffs, in the collection of their

debts, and the said Melone Brothers and de Steiguer fraudulently conspiring, contriving and colluding together, entered into an agreement for the purpose of defrauding these creditors, and as a part of such agreement, the said Melone Brothers or either or both of them, were to go east and purchase goods, ostensibly for the firm of Melone Brothers, and to order by mail, goods and merchandise, tne said de Steiguer was to advance to the Melone Brothers the cost of their trip east, to give them letters of recommendation and credit, and to permit said Melone Brothers to draw upon the National Bank of Guthrie, of which Louis de Steiguer was president, and general manager, small sight drafts upon said bank, and promised to honor the same when necessary, for a small part of the cost of said stock of goods, that might be purchased in order to enhance their credit and enable them to buy large amounts of goods and merchandise. And the said Melone Brothers and L. de Steiguer, to further carry out their fraudulent purpose and designs, agreed that the Melone Brothers should execute notes and mortgages for a large amount, upon the stock of goods that might be in the Melone Brothers' store, payable to L. de Steiguer, or the National Bank of Guthrie, of which L. de Steiguer was president.    That in furtherance of this conspiracy the said Melone Brothers went east, purchased goods and merchandise on credit, without the intention of paying therefor, and without paying therefor, in the aggregate amounting to $3,750; that the same were shipped and delivered and placed in the store room of Melone Brothers at Guthrie.    That the said de Steiguer did give them letters of recommendation and credit, that he did pay to them one hundred dollars for their expenses in going east to purchase goods, and that the Melone Brothers did on the 18th day

of November, 1891, execute to said L. de Steiguer, presi-
dent, two certain notes, one for $4,750, due November 25,
1901, and the other for $5,200, due upon December 1, 1891.
That to secure said notes the said Melone Brothers, made,
executed and delivered to said L. de Steiguer, president, a
mortgage upon the stock of goods in the store room of the
said Melone Brothers.   Plaintiffs further say that said
notes and mortgage were false and fraudulent, and were
given for the purpose of hindering, delaying, defrauding
and cheating the creditors of said Melone Brothers.   That
said fact was known by the said L. de Steiguer, who for
the purpose of carrying out the agreement heretofore set
forth, bought of said National Bank of Guthrie, said
notes and mortgage and satisfied the bank therefor.

That said de Steiguer did then and there fraudulently
take possession of said stock of goods, and merchandise,
under such fraudulent mortgage, and on the 24th day of
November, 1891, the Melone Brothers, at the direction and
command of L. de Steiguer, signed a bill of sale to E. T.
Patton & Company, defendants herein, for the stock of
goods, and delivered the same to L. de Steiguer, for a con-
sideration named therein at ten thousand dollars, but
the plaintiffs allege the fact to be that Melone Brothers
neither at that time or previously, had any contract or
negotiations for a contract of sale with E. T. Patton &
Company, and that no money was paid or agreed to be paid
from said E. T. Patton & Company upon said bill of sale,
but that said bill of sale was made and delivered to said L.
de Steiguer in furtherance and as a part of the conspiracy.
Plaintiffs further allege that afterwards, the said E. T.
Patton & Company, still knowing of the fraudulent charac-

ter of the sale, did take possession of said stock of goods and merchandise under such fraudulent sale, and the said E. T. Patton & Company then gave their check on the National Bank of Guthrie for the sum of $5,300, payable to L. de Steiguer, and afterwards executed and delivered a note to the National Bank of Guthrie, for $5,300, due in six months after date, which the said bank still holds, said note being given to said bank for the overdraft of the said E. T. Patton & Company, in payment of these goods, said check being given at the same time that said note was executed to the National Bank of Guthrie. The plaintiffs allege that the whole transaction was a part of the conspiracy entered into to delay, hinder and defraud these creditors, and to cheat them out of the collection of their debts. The plaintiffs further say that E. T. Patton & Company sold a large amount of the goods in said stock, and that no accounting has ever been made or payment made therefor, to the Melone Brothers or to any of their creditors; wherefore plaintiff prays that E. T. Patton & Company, L. de Steiguer, and the National Bank of Guthrie, be adjudged to be the debtors of the Melone Brothers, so far as the sale of said goods by E. T. Patton & Company was concerned, and that the note executed by E. T. Patton & Company to the National Bank of Guthrie, be declared the property of Melone Brothers, and that the said bank account to said Melone Brothers for said note, and any amount thereof that may have been paid, or that may be paid, and that said note given by Melone Brothers to said bank be also counted the property of said Melone Brothers, and that judgment be rendered in favor of plaintiffs against E. T. Patton & Company, L. de Steiguer, and the National Bank of Guthrie, for thirty-two hundred and forty dollars, and the further

sum of two thousand dollars, against the said National
Bank of Guthrie and L. de Steiguer, and for the costs of
this suit, and for such other and further relief as the plain-
tiffs may be entitled to.

To this petition the National Bank of Guthrie filed a
demurrer, which was by the court sustained, to which an
exception was saved by the plaintiffs. Afterwards the
defendant, A. R. Brooks, comes into open court and suggests
the death of E. T. Patton, and is allowed by the court to de-
fend as the surviving partner of the firm of E. T. Patton &
Company; she thereupon files her answer, which is a gen-
eral denial, and also files supplemental answer, alleging the
statute of limitations; the supplemental answer is in words
and figures as follows:

"SUPPLEMENTAL ANSWER.

"Comes now the defendant, E. T. Patton & Company,
and by leave of the court first had and obtained, and files
this their supplemental answer and shows to the court that
since the said pretended judgment for the sum of $10,-
529.43, was obtained on the 7th day of December, 1891, in
the district court of Logan county, Oklahoma Territory,
as alleged in plaintiff's petition and since the commence-
ment of this action, said judgment has become dormant;
that no execution has ever been issued upon said judgment,
and there has been no revivor of said action, and
said judgment is now dormant and is barred by the statute
of Oklahoma, being paragraph 4337, section 459, of the
code of civil procedure, 1893. That said judgment was
rendered more than five years before the passage of section
1 of chapter 39, of the Session Laws of 1895, and was never
revived by the issuance of an execution, or any attempt to
revive the same before the 28th day of February, 1900

That said judgment is now barred as against the said Me-lone Brothers.

"GEO. S. GREEN,
"W. E. EARL,
"Attorneys for E. T. Patton & Company."

*"Territory of Oklahoma, County of Logan, ss.*

" Annie R. Brooks, being duly sworn says that she is one of the defendants herein, and the surviving member of the firm of E. T. Patton & Company, that she has read the above supplemental answer, and that the facts stated therein are true, as she verily believes.

"ANNIE R. BROOKS.

"Subscribed and sworn to before me this 9th day of April, 1900.         GEO. M. GREEN, Notary Public.

"My commission expires July 29, 1902."

To which supplemental answer the plaintiffs file a de-murrer, on the grounds that the said supplemental answer does not state facts sufficient to constitute a defense, which demurrer is by the court overruled, to which the plaintiffs except. The plaintiffs thereupon file a reply to said amended answer, and deny all the allegations therein inconsistent with or contrary to the plaintiff's amended complaint. To the supplemental answer of the defendant, E. T. Patton & Company, the plaintiffs file a reply alleging that said judgment against the said defendants, Melone Brothers, was revived by consent in writing of one of the defendants, Drury L. Melone, a partner of the said firm, and that said judgment was thereby fully revived, and that said judg-ments were not dormant. To the reply, the defendants, E. T. Patton & Company, demurred, which demurrer, after being argued by counsel, the court takes under advisement

and defers action thereon, upon the ground that the same question will be involved in and be decided by the determination of the court in the final judgment of the case. Afterwards the said cause came on regularly for trial, at one of the regular days of the Logan county district court; the plaintiff introduced evidence and rested his case, whereupon the defendant, E. T. Patton & Company, demurred to the evidence. The demurrer was by the court sustained, to which order sustaining the demurrer of the defendants the plaintiffs except. It is therefore ordered and adjudged by the court, that the plaintiffs and each of them take nothing against said. defendant by this action, that the said defendant have and recover of and from the said plaintiffs, the costs of said action to be taxed by the clerk. To which orders and judgment of the court the plaintiffs and each of them, excepted and except, and file their motion to vacate and set aside the order of court sustaining said demurrer, and for a new trial of said cause, which motion is overruled by the court, exceptions saved by the plaintiffs, and the cause brought here for review.

In this statement of the case many of the motions made by the various parties, and the rulings of the court thereon, have been omitted, and only such portions of the pleadings as are necessary to properly present the case have been stated.

Opinion of the court by

IRWIN, J.: The only question involved in this appeal, and the one upon which the case turned in the district court, and upon which this appeal depends is, did the judgment against Melone Brothers, on which the last execution

was issued, as shown by the record, in 1892, become dormant during the pendency of the present action? And if so, does this defeat this suit?

Plaintiffs in error allege that this is not a statutory supplemental proceeding, but is an independent creditor's suit. It seems to us that an inspection of the pleadings will clearly demonstrate that this action is what is known in law as a creditor's bill. Mr. Black, in his Law Dictionary, on page 300, defines a creditor's bill as follows:

"A creditor's bill strictly, is a bill by which a creditor seeks to satisfy his debt out of some equitable estate, of the defendant, which is not liable to levy and sale under an execution at law."

Now, the proceedings in the case at bar had for their primary object the collection of a judgment against the defendants, Melone Brothers, and in favor of the plaintiff. They sought by this bill to subject the proceeds of a certain sale of goods to E. T. Patton & Company, to the payment of this judgment. This action was based entirely upon this judgment, and had no other purpose or object than the collection of this judgment, by reaching whatever was in the hands of E. T. Patton & Company, as the proceeds of the said sale, or whatever should properly be in their hands, as the result of the sale of these goods, and applying it to the payment of this judgment debt. Whatever was in the hands or should be in the hands of E. T. Patton & Company, as the result of the sale of said goods, was a chose in action, which, according to the statements of the petition, in equity and justice belonged to Melone Brothers. It was of that nature that it could not be reached

by the ordinary process of execution, hence the plaintiffs resort to this extraordinary method to subject these proceeds to the payment of this judgment. Therefore we think it clearly comes within the definition of a creditor's bill. This being true, let us next consider what are necessary conditions precedent to such an action.

The United States supreme court in the case of *Tube Works Co. v. Ballon,* 146 U. S. 523, says:

"Where it is sought by equitable process to reach equitable interests the bill, unless otherwise provided by statute, must set forth a judgment in the jurisdiction where the suit in equity is brought, the issuing of an execution thereon, and return unsatisfied, or must make allegations showing that it is impossible to obtain such a judgment in any court within such jurisdiction."

Now it logically follows that if there must be a judgment and an execution issued and returned unsatisfied, when it appears from the record that a judgment had become dormant, or what is known in common parlance as outlawed, so that an execution cannot be legally issued thereon, then the action must fail. As the proceedings at bar are simply in aid of the action by an execution, or in other words, are ancillary to an execution, and if no execution could be legally based upon this dormant judgment, it seems to us that no proceedings in aid or ancillary to an execution could be based upon such an execution. The language of our statute is that if five years have intervened between the date of the last execution issued on the judgment, and the time of suing out another execution thereon, such judgment shall become dormant, and shall cease to

operate as a lien upon the estate of the judgment debtor. (Paragraph 4337, Statutes of 1893.)

In the case of *Ross v. Duval,* 13 Pet. 44, the United States supreme court hold:

"That to avoid the operation of a statute of limitation, a party must show himself to be within the exception; that a statute operating to bar actions on judgments, bars executions on those judgments also."

And in the case of *McAleer v. Clay Co.,* 42 Fed. Rep. 667, Judge Shiras, speaking for the court, made this observation:

"The answer shows that before the amended information was filed the judgment became inoperative, and nonenforcible by reason of the lapse of time, creating a statutory bar to its enforcement."

And in the case of *Ross v. Duval,* above cited, the court further says:

"It cannot be supposed that the legislature would bar an action on a judgment, and still authorize an execution to be issued on it. If the right to an execution is barred, the right to a writ of mandamus to serve the purpose of an execution must be likewise barred."

And in the same case the court uses the following language:

"It is enough to know that the act of 1792 (Va.) imposes a limitation to actions and executions on judgments, by which, like all other limitation laws of the states a judg-

ment becomes inoperative. An action of debt will not lie upon it, nor can it be revived by *scire facias,* much less can an execution be issued upon it. Its vitality is gone beyond the reach of legal renovation."

We are aware that in time past the courts have looked with disfavor upon statutes of limitation, but we think the tendency of more modern authorities is to regard them more favorably, and they are now regarded as valid and meritorious defenses. We think the tendencies of modern courts is to put the defense of the statute of limitations upon the same plane with any other legal defense. In fact Judge Brewer, speaking for the court, in the case of *Glenn v. Dorsheimer,* 23 Fed. Rep. 699, says:

"Where the law furnishes to a party a simple method, of proceeding against an ultimate debtor, and he fails to pursue that, we think such debtor can appeal to the statute of limitation as a protection."

The supreme court of North Dakota, in the case of *Farmers National Bank v. Braithwaite,* 75 N. W. 244, reviews the authorities upon this question and holds:

"A judgment ceases to be valid after the expiration of ten years from the recovery thereof, unless suit is brought thereon, within ten years, and even in that case the judgment is dead for all purposes except supporting such action."

That where supplemental proceedings are instituted while the judgment is alive, they will fall to the ground upon expiration of the statute of limitations, and that the defendant may move to and have them set aside on the

ground that the judgment has ceased to be valid.    Such proceedings are not an action on the judgment, but are in the nature of a creditor's suit, to enforce the collection thereof; hence their pendency is no more effectual to keep alive the judgment, than such a suit or an execution would be.    Chief Justice Corliss in speaking for the court, said:

"When once it is ascertained that for any reason there is no longer any judgment, the proceeding to enforce it must fall to the ground.    It is immaterial whether the judgment has been paid, or has ceased to possess life owing to the lapse of time.    In either case there is no longer any judgment left to support the steps taken to enforce it.    A strange condition of the law it would be if, after the lien of the judgment on real estate had been lost, and after the plaintiff was powerless to enforce it by execution, and despite the fact that he could no longer give it new life, by a suit upon it resulting in the recovery of a new judgment, he could nevertheless through a receiver in supplementary proceedings, reach and sell the debtor's land and subject all of his assets, legal and equitable, to the payment of the same outlawed judgment."

In the case of *McAfee v. Reynolds,* (Indiana) reported in the 18th L. R. A. 211, it is said:

"The decision that a valid cause of action may be lost by mere lapse of time pending a suit to enforce it, is a striking exception to the general rule."

And in the opinion in this case Mr. Justice Elliott makes this observation:

"The difficulty is created by the fact, for the fact it is, that at the time the decree was pronounced, the judgment of the plaintiff had ceased to have any force as a lien.    The

proposition of appellant that the lien of the judgment as fixed by the statute, cannot be prolonged by the courts, is indisputably correct."

And in that case he cites: *Wells v. Bower* 126, Ind. 115; *Shanklin v. Simms,* 110 Ind. 143; *Brown v. Narkoff,* 118 Ind. 569; *Applegate v. Edwards,* 45 Ind. 329; *Albee v. Curtis,* 77 Iowa, 644; *Hutcheson v. Grubbs,* 80 Va. 251; *Boyle v. Maroney,* 73 Iowa 70; *Spencer v. Haug,* 55 Minn. 231; *Newell v. Dart,* 28 Minn. 248.

And the United States supreme court, in deciding wherein and under what circumstances a creditor has a vested right in concealed property, in the 92 Fed Rep. 269, uses the following language:

"Whenever a creditor has a vested right in or lien upon property, the enforcement of which is hindered or rendered inadequate by a fraudulent conveyance or incumbrance, he may maintain a suit in equity to remove it, without exhausting his other legal remedies."

We think that the invariable rulings, at least so far as we have been able to find them, of the various courts have been, that as a necessary, absolute condition precedent, there must be an actual subsisting judgment, to support a creditor's bill, at the time of rendering the decree therein. The Minnesota supreme court, in a case which in principle is identical with the case at bar, has laid down what we think to be the true rule in such cases. In the case of *Newell v. Adolphus Dart et al.,* reported in the 9 N. W. page 732, which was an action in the nature of a creditor's bill, brought by plaintiff as judgment creditor of defendant, Adolphus Dart, to reach a judgment held by the judgment

debtor, against defendants, Lewis and Shaubut, and to have it applied in satisfaction of his own judgment, the judgment held by plaintiff against Adolphus Dart was rendered and docketed January 23, 1870. Execution had been issued on it July 15, 1870, and returned unsatisfied September 15, 1870. An alias execution had been issued on it September 20, 1878, and levied the same day upon the judgment now sought to be reached to satisfy this execution. The principal relief sought by plaintiff is that this judgment held by his judgment debtor, Adolphus Dart, against Lewis and Shaubut, be appropriated to the payment of his own judgment against said Dart, and be for that purpose ordered sold, under the alias execution issued thereon, as aforesaid, and still in the hands of the sheriff. This action was commenced September 21, 1878, the trial of the action was closed, and the cause submitted to the court for its decision, July 11, 1880, and its decision filed August 11, 1880. The case was afterwards twice reopened, once on application of defendants, and once on application of plaintiff. and finally submitted and additional findings filed, September 17, 1880 and final judgment entered thereon October 8, 1880. Judge Mitchell, speaking for the court says:

"The plaintiff's right to the relief sought depends entirely upon the existence of his judgment. This action is wholly ancillary to the judgment, and in aid of the execution issued thereon, for the purpose of reaching a certain chose in action of the judgment debtor, and having it applied in satisfaction of the plaintiff's judgment. Hence, if plaintiff's judgment be dead, his whole case falls to the ground. It is provided by statute that a judgment shall survive and the lien thereof continue, for the period of ten years and no longer. (Gen. Stat. 1878, chap. 66, sec. 77.)

In the present case this period expired June 23, 1880, and during the pendency of this action, hence before the final trial and decision of this case, and before judgment rendered therein, plaintiff's judgment had ceased to exist, either as a cause of action or as a lien, unless kept alive by the commencement and pendency of this action beyond the statutory period of ten years. We do not think the pendency of this action had any such effect. It is not in any proper sense, as before remarked, an action brought upon the judgment as a cause of action, in order to obtain a new judgment, but simply an action ancillary to, and for the purpose of obtaining satisfaction of an existing judgment. It has been repeatedly held that a pending levy of an execution, made during the life of a judgment, will not operate to continue the life or lien of a judgment beyond the statutory period; that a judgment creditor must sell the property levied upon within the statutory period of the life of the lien of the judgment, that a levy during that period neither creates a new lien, nor extends the judgment lien, that nothing but a renewal during the life of the judgment, will continue the lien of the judgment, that if an execution is issued at so late a day that a sale cannot be made within the life of the judgment, it should be accompanied by a *scire facias* or renewal."

And he there cites as authority for this proposition: *Tenney v. Hemenway,* 53 Ill. 97; *Gridley v. Watson,* 53 Ill. 186; *Isaac v. Swift,* 10 Cal. 71; *Bagley v. Ward,* 37 Cal. 121; *Rogers v. Druffel,* 46 Cal. 654; *Davis v. Ehiman,* 20 Pa. Stat. 256; *Tuffts v. Tuffts,* 18 Wend. 621; *Little v. Harvey,* 9 Wend. 157; *Roe v. Swart,* 5 Cow. 294.

An the court further says in this case:

"It is true that these are all cases where the judgment creditor was proceeding entirely under his execution at

law, against property which could be taken and sold upon it. But we think they are in principle entirely analagous to the case at bar. We fail to see any distinction in principle between a case where, for the purpose of enforcing his judgment, a party resorts to execution to reach property liable to such process, and a case where, for the same purpose, he proceeds by creditor's bill or supplmentary proceedings to reach assets not subject to execution. In both cases the object is the same, to reach property of the debtor in order to satisfy an existing judgment, and there is no reason why a creditor's bill, or supplementary proceeding, (which are a satisfactory substitute for the former), should continue the life of a judgment beyond the statutory period in the one case, than that a levy under an execution should do so in the other. We are, therefore, of opinion that plaintiff's judgment became barred and ceased to exist, either as a cause of action or as a lien, during the pendency of this action. It is suggested by counsel that any judgment against Adolphus Dart might be rendered in this action. We think such relief would be entirely foreign to the nature and manifest purpose of the action."

Now it seems to us that changing the names of the parties, and changing the ten year limitation of the Minnesota statute, for the five year limitation of the Oklahoma statute, the case at bar and the cases cited last, are identical in principle, and the same reasoning that applies to the Minnesota case will apply to the case at bar. The language of our statute is that judgments shall be barred in five years from the date of the last execution, and that of the Minnesota statute, that they shall be barred in ten years.

In the case at bar it is insisted by counsel for plaintiffs in error that E. T. Patton & Company should be made to account to plaintiffs in error as fraudulent trustees. Now if they can be compelled to account to the plaintiffs in error,

it is by virtue of the fact that the plaintiffs in error are *bona fide* judgment creditors, and that that relation of judgment creditor is an existing relation at the time that this decree is sought.

This action is brought upon, and is entirely ancillary to the judgment rendered in favor of the plaintiffs in error and against Melone Brothers.

Now unless the judgment is a subsisting cause of action at the time of this decree in favor of the plaintiff in error is sought, then it is not a sufficient foundation upon which this proceeding can be based. We take it that the statute of limitations, or, as it is sometimes called, the statute of repose, in effect entirely wipes out the legal force and effect of a judgment, and that a judgment once rendered dormant, by the operation of the statute of repose, can only be revived in the way pointed out by law. In the case at bar, not only five but seven years had elapsed since an execution was issued upon the judgment against Melone Brothers, and in contemplation of law, such judgment was legally dead, and beyond the power of this or any other court, to breath into it legal vitaltiy, as the time provided by statute in which it might be revived, had long since elapsed. But counsel for plaintiff in error claimed that although this judgment had become dormant, by the lapse of time, that it was revived by the written consent of Drury L. Melone, and that said written consent revived the judgment with all its original force. We do not think this can take the place of the statutory method of reviving a judgment. This judgment was against not only Drury L. Melone, but his brother and partner. The judgment was against Melone

Brothers, and we think whether by *scire facias,* or any other method of reviving a judgment, the proceedings must be against all. We do not think that Drury L. Melone, one of the partners, had authority, long after the partnership had ceased, to revive a judgment against Melone Brothers. We think it may be laid down as a general rule, and a rule supported by the great weight of authority, that all parties to the original judgment, if living and not discharged, must be made parties to the proceedings, to renew or revive that judgment. In the case of *Funderburk v. Smith,* 74 Ga. 515, it was held that if one was not made a party and served with notice to revive, it was error to revive the judgment as to the other parties. The whole judgment must be revived and not a part of it.

Under the Statute of Oklahoma of 1893, paragraphs 3517-18, the authority of a partner is defined. One partner cannot even confess judgment for the firm, much less revive a judgment, unless his copartner has wholly abandoned the business, or is incapable of acting in the premises, and if these facts existed in the case at bar, there should have been some showing made of that fact. It seems to us that any action taken by one partner, long after the firm has ceased to do business, in attempting to revive actions barred by the statute of limitations, against the firm, must be void. In support of the doctrine that all parties to the original judgment should be served in proceedings to renew or revive the judgment, we cite: *Rowling v. Fowler* 14 Ark. 27; *Greer v. State Bank,* 10 Ark. 456; *Finn v. Crabtree,* 12 Ark. 597; *Bowie v. Neal,* 41 Md. 124; *Davidson v. Alvord,* 3 Ind. 1.

It seems to us on a careful review of this cause, that

the judgments against Melone Brothers, as shown by this record, are legally dead, and there is no vitality left in them. That the attempted revival on the part of Drury L. Melone, is wholly void, is a nullity; and in fact a valid and existing judgment is necessary before a decree in a case of this kind can be had, and without such judgment in active force, an action of this kind must fail. This being true, we think that the action of the district court in sustaining the demurrer to the evidence, which clearly shows that the judgment against Melone Brothers, in favor of plaintiff in error, was dormant, was correct, and entirely in accord with the weight of authority.

This being the only point in controversy, and being the only error urged for a reversal of this judgment, we think the judgment of the district court should be affirmed, which is accordingly done.

Burford, C .J., having presided in the court below, not sitting; all the other Justices concurring.