GENERAL ELECTRIC CO. v. HURD et al.

(Circuit Court, D. Oregon. July 26, 1909.)

No. 3,151.

1. JUDGMENT (§ 853*)—"DORMANT JUDGMENT."

A "dormant judgment" is one that has become inoperative so far as the right to issue an execution thereon is concerned.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 853.*

For other definitions, see Words and Phrases, vol. 3, p. 2183; vol. 8, p. 7642.]

2. COURTS (§ 355*)—FEDERAL COURTS—ADOPTING PRACTICE OF STATE COURTS—STATUTES.

Rev. St. § 916 (U. S. Comp. St. 1901, p. 684), providing for the execution of judgments of federal courts, made applicable to decrees solely for the payment of money by equity rule 8, adopted the remedies established by law in the several states at the time the section became a law, but not the subsequent state enactments regulating such remedies; they being left for adoption by rule as the federal court might deem advisable.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 935; Dec. Dig. § 355.*]

3. COURTS (§ 354*)—FEDERAL COURTS—ADOPTING PRACTICE OF STATE COURTS—JUDGMENT—LIEN—LIMITATIONS.

Where, under the law of a state in force prior to 1872, made applicable to federal judgments and decrees by Rev. St. § 916 (U. S. Comp. St. 1901, p. 684), and equity rule 8, the lien of a judgment lapsed at the end of 10 years from the entry thereof unless execution was issued in the meantime, and requiring leave of court to issue an execution after five years have elapsed without an execution being issued, the lien of a federal decree, on which no execution had been issued since March 28, 1894, had lapsed.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 354.*

Conformity of practice in common-law actions to that of state courts, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

4. CREDITORS' SUIT (§ 16*)—CONDITIONS PRECEDENT—RIGHT TO EXECUTION.

Where complainant had no execution pending on a decree and was not entitled to execution except by leave of court on appropriate motion and notice to the judgment debtor, it could not maintain a suit in equity in aid of the execution.

[Ed. Note.—For other cases, see Creditors' Suit, Dec. Dig. § 16.*]

**5. EXECUTION (§ 72*)—RIGHT TO ISSUANCE—LEAVE OF COURT.**

Where a judgment creditor is only entitled to an execution by leave of court, his right is only established when he obtains an order of court directing that execution issue.

[Ed. Note.—For other cases, see Execution, Dec. Dig. § 72.*]

**6. COURTS (§ 354*)—FEDERAL COURTS—ADOPTING PRACTICE OF STATE COURTS—EXECUTION.**

B. & C. Comp. Or. § 241, provides that if, at any time after the entry of judgment, 10 consecutive years have elapsed without execution, no execution shall thereafter issue on the judgment which shall thereafter be conclusively presumed to be paid. *Held*, that such section, being a statute of limitations, was a rule of property binding on the federal court sitting in Oregon under Rev. St. § 721 (U. S. Comp. St. 1901, p. 581), declaring that the laws of the several states are to be regarded as rules of decision in trials at common law in courts of the United States in cases where they apply, and hence a federal decree recovered in Oregon, on which no execution had been issued for more than 10 years, was barred.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 934; Dec. Dig. § 354.*]

## In Equity.

The facts attending this cause, necessary to an understanding of the present controversy, are as follows:

On April 14, 1893, the Northwest Electric Company recovered a decree in this court against L. L. Hurd, defendant above, and his wife, Josephine Hurd, for the sum of $13,138.50. H. W. Goode, who was a defendant in that suit, by a cross-bill recovered a decree against Hurd also for the sum of $2,694.08 Under an execution and order of sale, certain property was sold at master's sale, and the proceeds applied in part satisfaction only of these decrees. Thereupon, to wit, on November 16, 1893, a deficiency decree was rendered, in favor of the complainant and against Hurd, for the sum of $5,296.93 and also a like decree in favor of Goode for $2,006. On the 28th day of March, 1894, an alias execution was issued upon the Goode decree, upon which the sum of $934.50 was realized, and the decree in his favor was satisfied to that extent, and no further. The complainant in this suit has succeeded, by assignment, to the ownership of both these decrees. Since the issuance of the last execution upon the Goode decree, the judgment debtors have had no visible property subject to execution and sale. This fact is set forth as a reason why no subsequent execution has ever been issued upon either of said decrees.

In addition to these facts, it is further alleged, by the bill of complaint herein: That, in the year 1900, S. C. Flint, by contract with the defendant Oregon & California Railroad Company, acquired the right to purchase certain real property, of large value; that Hurd, by agreement with Flint and the advancement of one-half of the purchase price of said real property, is entitled to and is the owner of a one-half interest in the contract, and is the equitable owner of a half interest in said real property; but that Flint is holding the same in secret trust for the defendant Hurd, with intent, on the part of both Flint and Hurd, to cheat and defraud the creditors of the latter —all of which matters and things concerning the contract of sale and the secret trust obtaining with reference to said real property were and remained wholly unknown to the complainant until about the 1st day of February, 1907—and that said Hurd, and his wife Josephine, were and are insolvent.

A discovery is prayed, and that the alleged equitable interest of Hurd in the contract with the railroad company be subjected to the satisfaction of said decrees theretofore rendered against him.

The cause has been submitted upon demurrer to the bill for insufficiency.

Albert Abraham, for plaintiff.
Coshow & Rice, Wm. D. Fenton, and R. A. Leiter, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WOLVERTON, District Judge (after stating the facts as above). The theory upon which this suit is instituted is that it is an ancillary proceeding in aid of an execution for the enforcement of subsisting decrees for the payment of money. The decrees themselves, however, have concededly become dormant; that is to say, they have become inoperative so far as the right to issue execution thereon is concerned. They may be more than dormant; they may be dead; but of this later.

By section 916 of the Revised Statutes (U. S. Comp. St. 1901, p. 684), which was enacted June 1, 1872:

"The party recovering a judgment in any common-law cause in any Circuit or District Court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the state in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of such Circuit or District Court; and such courts may, from time to time, by general rules, adopt such state laws as may hereafter be in force in such state in relation to remedies upon judgments, as aforesaid, by execution or otherwise."

In pursuance of section 8 of the rules of practice in equity, this section, as it relates to remedies by execution, applies also to decrees solely for the payment of money. It may be observed, which is apparent from its reading, that section 916 adopts the remedies which were established by law in the several states at the time the section became a law; but it did not adopt subsequent enactments of the states regulating such remedies. These were left for adoption by rule of court, as the federal courts might deem advisable. So that no state law, passed subsequent to the adoption of section 916, could be effective to modify the practice then in force under federal procedure, unless it had the sanction of a rule of court. The principle has the explicit approval of the federal Supreme Court. See Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253; Bank of the United States v. Halstead, 10 Wheat. 51, 6 L. Ed. 264; Beers v. Haughton, 9 Pet. 329, 9 L. Ed. 145.

There exist no rules of court in this jurisdiction adopting any subsequent legislation of the state of Oregon relating to the regulation of final process. In logical sequence, it is now pertinent to inquire what remedy the complainant had, or now has, for the enforcement of its decrees.

The statutory regulations in the state prior to 1872 were that, immediately after the entry of judgment, the plaintiff was entitled to have the same docketed. From the date of such docketing, the judgment became a lien upon the real property of the judgment debtor. This lien lapsed at the end of 10 years from the date of entry of judgment, unless execution was issued thereon in the meantime. It was further provided that whenever, after the entry of judgment, a period of five years elapsed without an execution being issued on such judgment, thereafter an execution should not issue except as in the section prescribed. The proceeding was, by motion in the cause, addressed to the court, asking leave to issue the execution. The order of the court was required to specify the amount for which execution was to issue, and the order itself was entered and docketed as a judgment, and treated as a final record. Sections 266, 267, and 292, Deady & Lane's Civ. Code. Thus is prescribed the relief or remedy to which complain-

ant was entitled, by way of execution, under section 916 of the Revised Statutes.

Having issued no execution upon its decrees within 10 years, the liens thereof have lapsed, whatever property may have been affected thereby in the meanwhile; but, what is of more serious account, complainant is proceeding upon the hypothesis that its suit is in aid of an execution to enforce the decrees. By its own showing it has no execution, nor can it have any unless by leave of the court, granted upon appropriate motion addressed to it, and notice to the judgment debtor. The very theory of the suit is therefore without foundation or basis for its own support. Without an execution, or a right to have one issued, it is difficult to understand upon what principle the suit can be maintained. Judgments are enforceable through the instrumentality of an execution, and, unless that instrumentality is applied, there is no other way for their enforcement. Equity may interpose in an ancillary way to make the execution effective; but without the execution, or right to its issuance, even equity is powerless to enforce the judgment. If complainant was entitled to its executions on these decrees under the old law, it should have taken the proper steps for leave to issue the same, and, when granted, have had the execution issued. Then, and not until then, would it have laid the proper foundation for a suit in aid thereof. Without these prerequisites the suit will not lie. The decrees are, in effect, dormant and insusceptible of enforcement except by the process of execution. If the execution was issuable as of course, the right thereto would be apparent; but, if it must first issue by leave of court, the right is not established unless by order of the court. Such an order has not been obtained in this case, and the complainant must fail for this reason, if for none other.

The principle involved finds support in the cases of Mullen v. Hewitt, 103 Mo. 639, 15 S. W. 924, and Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358. In the former case the purpose of the bill was to collect a dormant judgment by decree of equity, without reviving the judgment or being entitled to an execution, and it was held insufficient by the test of a demurrer. And in the latter case it was said:

"In all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered, accompanied by a right to the appropriation of the property of the debtor, for its payment, or, to speak with greater accuracy, there must be, in addition to such acknowledged or established debt, an interest in the property or a lien thereon created by contract or by some distinct legal proceeding."

I have proceeded thus far by giving the complainant the full benefit of its own theory of suit. There is another view to be taken of the situation. By a later statute of the state, adopted in 1893, it is provided that:

"If, at any time after the entry of judgment, a period of ten consecutive years shall have elapsed without an execution being issued on such judgment during such period, no execution shall thereafter issue on such judgment, and such judgment shall thereafter be conclusively presumed to be paid and satisfied unless an execution be issued thereon within one year from the passage of this act." Section 241, B. & C. Comp. Or.

This is a limitation, and not a process statute. When there is want of the issuance of an execution within 10 years, the judgment becomes not only dormant, but dead. No execution can thereafter issue, and no action can be maintained upon the judgment, because it is conclusively presumed to have been paid. By section 721 of the Revised Statutes (U. S. Comp. St. 1901, p. 581), the laws of the several states are to be regarded as rules of decision in trials at common law, in courts of the United States, in cases where they apply. This is the purport of section 34 of the original judiciary act of September 24, 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. 92). Under this law section 241 of the Oregon statute becomes a rule of property, and it precludes complainant's right of suit for the enforcement of its decrees under any contingency. The very question was decided early in 1839 in the case of Ross v. Duval, 13 Pet. 45, 10 L. Ed. 51. By an act of the state of Virginia, it was provided that:

"Judgments in any court of record within the commonwealth, where execution hath not issued, may be revived by scire facias, or an action of debt brought thereon, within ten years next after the date of such judgment, and not after." 1 Rev. Code 1819, p. 489, § 5.

The court, having under consideration this act in connection with the United States process acts of 1789 and 1792, has this to say:

"And here the question arises whether the Virginia act of 1792, having been passed subsequent to 1789, can have any effect in the present case. So far as this act can be held to regulate executions, it is clearly inapplicable under the process acts of 1789 and 1792 to the Circuit Court; but the act is substantially and technically a limitation on judgments. It is not therefore an act to regulate process. Executions are named in the act, and are authorized to be issued under certain circumstances, within a limited time; but this is only another mode of limiting the judgment, and is strictly and technically as much a limitation on the judgment, as is imposed in the first part of the same section in reference to a scire facias or action of debt. The act provides that after the lapse of 10 years from the rendition of a judgment, where no execution has been issued, neither an action of debt nor a scire facias shall be brought on it, and that, where an execution has been issued and not returned, other executions and proceedings may be had within the 10 years, but not afterwards. If this, then, be a limitation law, it is a rule of property, and, under the thirty-fourth section of the judiciary act, is a rule of decision for the courts of the United States. As an act of limitation, it is impossible to distinguish this from other acts which limit the time of bringing certain actions, either by a designation of the ground or the form of the action."

To the same purpose, see Newell v. Dart, 28 Minn. 248, 9 N. W. 732; Miller & Co. et al. v. Melone et al., 11 Okl. 241, 67 Pac. 479, 56 L. R. A. 620.

The act of 1893 of the state therefore, being a limitation statute, is a rule of property, and is binding upon the federal courts, under section 721 of the Revised Statutes, as well as upon the state courts, and by the rule complainant is without a cause of suit.

From these considerations, the demurrer to the bill of complaint will be sustained, and the bill dismissed.