FREDERICK BROWN, Respondent, *v.* LOUIS N. ROSENBAUM, Appellant.

Submitted December 9, 1941; decided March 5, 1942.

*Charles H. Tuttle* for appellant. The suit was properly dismissed because there was no debt or privity of contract between plaintiff's assignor and the defendant. (*Spencer* v. *Ashworth, Partington & Co.*, [1925] 1 K. B. 589; *Kellock* v. *Enthoven*, 9 Q. B. 241; *Broderick* v. *Aaron*, 264 N. Y. 368; *Broderick* v. *Adamson*, 148 Misc. Rep. 353; 270 N. Y. 228; *Richards* v. *Robin*, 175 App. Div. 296; 225 N. Y. 719; *Gaffney* v. *People's Trust Co.*, 191 App. Div. 697; 231 N. Y. 577; *Broderick* v. *Alexander*, 268 N. Y. 306.) A person who acquires bank stock after the bank has ceased to do a regular banking business under a mandate of the state is not subject to liability for assessment or indemnity, so long as the bank remains closed. (*Broderick* v. *Aaron* [*Kornberg*], 268 N. Y. 260; *People* v. *Merchants Trust Co.*, 116 App. Div. 41; 187 N. Y. 293; *Broderick* v. *Adamson* [*Greif*], 270 N. Y. 260; *Richards* v. *Scharmann*, 97 Misc. Rep. 143.) Under the proclamations and by reason of its insolvency the suspension of the bank was permanent. It could not and did not obtain a license to reopen. (*Broderick* v. *Aaron* [*Kornberg*], 268 N. Y. 260.) Where a bank was insolvent as of the date of the proclamation and in consequence never reopened, that date must be accepted as the official date of closing, fixing the rights of creditors and debtors and terminating the assessment period as regards stockholders. (*Oppenheimer* v. *Harriman Nat. Bank & Trust Co.*, 301 U. S. 206; *Goess* v. *A. D. H. Holding Corp.*, 85 Fed. Rep. [2d] 72; *Gimble* v. *Harriman Nat. Bank & Trust Co.*, 11 Fed. Supp. 836; *Goess* v. *Ehret*, 85 Fed. Rep. [2d] 109; *State* v. *Harris*, 59 Ohio App. 165; 135 Ohio St. 449; *Smith* v. *Witherow*, 102 Fed. Rep. [2d] 638; *Dehne* v. *Mine Safety Appliance Co.*, 94 Fed. Rep. [2d] 956.)

*Alfred A. Cook, Kenneth E. Walser* and *Henry Cohen* for respondent. Plaintiff's assignor paid the assessment in behalf of the defendant, the owner of the shares, and plaintiff is entitled to reimbursement. (*Commercial Nat. Bank* v. *Sloman,* 121 App. Div. 874; 194 N. Y. 506; *Maule* v. *Garrett,* L. R. 7 Exch. 101; *Brinkley* v. *Hambelton & Co.,* 67 Md. 169; *Rogers* v. *Toland,* 43 Pa. Super. Ct. 248; *Laurent* v. *Anderson,* 70 Fed. Rep. [2d] 819; *Ward* v. *Simon,* 23 Fed. Supp. 117; *Way* v. *Mooers,* 135 Minn. 339; *Poston* v. *Hull,* 75 Ohio St. 502; *Early* v. *Richardson,* 280 U. S. 496.) The failure of the bank to meet its obligations occurred when a conservator was appointed on March 13, 1933. (*Pyne* v. *Jackman,* 12 Fed. Supp. 653; *Schram* v. *Clair,* 28 Fed. Supp. 422; *Ward* v. *Simon,* 23 Fed. Supp. 117; *Munro* v. *Post,* 23 Fed. Supp. 308; *Sadlier* v. *Lay,* 222 Wis. 641; *Goess* v. *Myers,* 134 Pa. Super. Ct. 272; *Steele* v. *Randall,* 19 Fed. Rep. [2d] 40.)

LEHMAN, Ch. J. Plaintiff's assignor, George Blumenthal, paid a judgment for the sum of $10,263.28 recovered against him as owner of 92 shares of stock of the Harriman National Bank and Trust Company of the city of New York, in an action brought by the receiver of the bank to enforce the liability imposed by federal statute (U. S. Code, tit. 12, § 64) upon the stockholders of an insolvent national banking association. Blumenthal had transferred shares in the bank within sixty days prior to Monday, March 13, 1933, when a conservator was appointed for the bank. The buyers had in turn transferred the same shares before that date. Blumenthal's liability under the provisions of the statute is clear beyond dispute. Claiming that at the time the bank failed to meet its obligations the defendant was the owner of the shares of stock which Blumenthal had transferred within sixty days before that time, the plaintiff, as Blumenthal's assignee, brought an action to compel the defendant to repay the amount which Blumenthal, as the prior owner of the shares, had been compelled to pay. He has recovered a judgment against the defendant for the par value of eighty-six shares of such stock with interest. The defendant has appealed from that judgment.

The statute which imposes liability upon stockholders of national banking associations provides.

" Individual liability of shareholders; transfer of shares.

" The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure. (Dec. 23, 1913, c. 6, § 23, 38 Stat. 273.) " (U. S. Code, tit. 12, § 64.)

The defendant on Monday, *March 6, 1933*, agreed to purchase ninety-two shares of stock in the bank. No bank in the State of New York was open for business on that date for the Governor of the State, shortly before midnight on March third, had by proclamation " set apart, Saturday, March 4th, and Monday, March 6th, as holidays on which all banking institutions will be closed." By subsequent proclamation of the President and the Governor, all banks remained closed and were prohibited from carrying on their banking business, except as authorized by the Secretary of the Treasury, until March 13th. Then banks which were solvent were permitted to resume business in accordance with regulations of the Secretary of the Treasury. The Harriman National Bank and Trust Company was, it is conceded, insolvent " by a large sum " on March 3d when, like all other banks in New York, it was compelled to close by proclamation of the Governor. Until that time it had carried on its usual banking business and had not

failed to meet its obligations. When solvent banks were thereafter permitted to reopen a conservator was appointed for the Harriman National Bank and it was forbidden to pay its depositors. When its hopeless insolvency was revealed, its business was liquidated.

The judgment against the defendant is based upon a finding of fact that on *March 11, 1933*, while all banks remained closed in accordance with the proclamations of the President and Governor, eighty-six shares of stock, identified as shares which plaintiff's assignor had transferred a few weeks earlier, were delivered to the agent of the defendant upon the contract of purchase and sale made in behalf of the defendant on March 6th. The defendant challenges that finding. It is fully supported by the evidence. Two questions of law remain, which must be decided upon this appeal: *First.* Was the date of the bank's failure " to meet its obligations," at which time the statutory liability of stockholders attached, March 3, 1933, before the defendant purchased his stock, or March 13th, after the stock was delivered to defendant? *Second.* May a stockholder who has transferred his stock within sixty days before the date of the failure of the bank to meet its obligations and who, for that reason, has been compelled to pay a judgment recovered against him in an action brought to enforce the statutory liability imposed on stockholders of banking associations, maintain an action for reimbursement against the stockholder who had become the owner of the stock at the date of such failure through delivery from persons to whom it had been previously transferred?

It is clear that a bank has not failed to meet its obligations within the meaning of the statute so long as it pays its obligations at the time and place its obligations are payable. While all banks remained closed by command of the government, the date when payment of the obligations of each and all banks became due and could be demanded was postponed. Certainly no solvent bank which resumed business and paid its· obligations when permitted by the government was in default in any payment for which it

would have been liable in the interval if the date for payment had not been postponed. The appellant, of course, does not claim otherwise. His claim is that where a bank was insolvent at the time it was closed by governmental authority and for that reason was not thereafter permitted to reopen, the date on which it was compelled to close under proclamation of the President or of the Governor fixes the time when rights of creditors and the responsibility of stockholders for the debts of the bank became fixed.

Under the National Banking Act the rights of creditors against a national bank attach when an " act of insolvency " is committed. (See U. S. Code, tit. 12, § 91.) The directors have no power after that date to change or defeat such rights by preferential payments or other devices. Under ordinary circumstances the date of insolvency is fixed when the assets of a bank are surrendered by its directors to the Comptroller for administration or when the Comptroller exercises administrative authority to conserve or liquidate bank assets. During the banking holiday when *all* banks were closed by governmental authority and payment of any banking obligations was prohibited, there was no occasion for the Comptroller to take possession of the assets of an insolvent banking association in order to conserve them or to prohibit the insolvent banking association from continuing to conduct its banking business. When an insolvent bank was denied permission to reopen for regular business after the end of the banking holiday, though solvent banks then resumed their usual banking operations, the date when the *rights of creditors* attached was properly fixed at the time when " the facts indicated that the bank would not be able to pay its depositors in due course " though at that time the banking holiday was not completely at an end. (*Downey* v. *City of Yonkers*, 106 Fed. Rep. [2d] 69, 74; affd., 309 U. S. 590. See, also, *Bryce* v. *National City Bank*, 17 Fed. Supp. 792; affd., 93 Fed. Rep. [2d] 300.)

Congress has not, however, provided that the *liability of* stockholders like the rights of creditors against an insolvent bank, attaches at the date of an " act of insolvency."

Congress has expressly provided that liability of stockholders of an insolvent banking association attaches and becomes fixed upon " the date of the failure of such association to meet its obligations." The time when it appears that insolvency makes it impossible for a bank to meet all its obligations as they mature has been chosen by Congress as the appropriate date upon which the rights of creditors against the bank attach; the time when a bank is actually in default in meeting its obligations as they become due has been decreed by Congress as the appropriate date upon which the liability of stockholders of the bank attaches. Often, perhaps usually, the dates will coincide — not always.

Where, while other banks remain open, a bank is closed or is placed upon a restricted basis or is prohibited or prevented from paying its debts as they become due *in order to conserve its assets* pending determination whether it is insolvent or whether its capital has been impaired and if impaired whether the impairment can be corrected, there is a " failure " of the bank " to meet its obligations." In such case the closing of the bank may determine both the date when the rights of creditors and the liability of stockholders attach. That is true even though at that time it is hoped that the closing may be only temporary. (See *Broderick* v. *Aaron* [*Kornberg*], 268 N. Y. 260; *State ex rel. Squire* v. *Harris*, 59 Ohio App. 165; affd., 135 Ohio St. 449; *Willing* v. *Jensen*, 17 Fed. Supp. 596; *Willing* v. *Pennsylvania Co.*, 21 Fed. Supp. 233.) When, however, by proclamation of the President and Governor, made pursuant to authority vested in them, the date upon which banking obligations became due and may be paid is postponed, there is, as we have already pointed out, no " failure " by any bank " to meet its obligations." That is the case here. The date of such failure arrives only when a bank fails to open or refuses to meet its obligations which then have matured though other banks are open and carrying on their business without restriction. The Comptroller of the Currency is not charged with responsibility to fix that date. It is fixed according

to statute by an act of default, not by an act of insolvency, and the courts must determine when such an act has occurred. Here, it is shown, as matter of law, the act of default occurred on March 13, 1933, and that date cannot be altered by any administrative ruling.

Though on that date the defendant was the owner of eighty-six shares of stock in the bank and subject to the statutory liability imposed upon stockholders to the amount of the par value of the stock each owned, the payment by the plaintiff's assignor of the assessment levied upon the stock owned by the defendant satisfied the defendant's statutory liability and relieved him of further payment upon it. The plaintiff's assignor, having transferred the same stock within sixty days of the date when the statutory liability of stockholders attached, remained subject to a stockholder's statutory liability as if he had made no transfer but only " to the extent that the subsequent transferee fails to meet such liability." When the statutory liability of " the subsequent transferee " is extinguished by the payment made by the stockholder who had transferred his stock, no right of action for the failure of the transferee to meet such liability is created *by the statute* in favor of the stockholder who made the transfer. Recourse, if any, against the transferee must be by common law action. Here the plaintiff asserts a right of action based on a contract implied in law for moneys which his assignor was compelled to pay though it was the duty primarily of the defendant to make the payment.

The general rule which must be applied where such a right of action is asserted has been firmly established by an almost unbroken line of judicial decisions and by academic authority. " A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, * * *." (American Law Institute, Restatement of the Law of Restitution, § 76.) Where payment by one person is compelled, which another should have made or which redounds solely to

the benefit of another, a contract to reimburse or indemnify is implied by law. The defendant does not seriously dispute the rule but he maintains that the obligation to pay was imposed upon both the plaintiff and the defendant, that no privity of contract or estate existed between them and that the defendant was under no greater duty to pay and derived no greater benefit from the payment than the plaintiff.

This court has in many cases been called upon to define rights and liabilities arising under analogous provisions of the statute in this state which formerly imposed a similar liability upon stockholders of banks organized under the law of New York. (Banking Law [Cons. Laws, ch. 2], §§ 80 and 120 [113-a], now partially repealed and renumbered by L. 1938, ch. 684.) In the statute " stockholders " upon whom liability for the debts of an insolvent bank was imposed were defined as " 1. Such persons as appear by the books of the bank to be stockholders; 2. Every owner of stock, legal or equitable, although the same may be on such books in the name of another person  *   *   *." Under that definition only a stockholder of record and the legal or equitable owner of stock standing in the name of another *at the time when the stockholder's liability attached* were subject to the statutory liability. The record owner may have sold and transferred his stock; the buyer may have in turn sold his stock to another; " the record holder may not even know that the buyer has transferred the stock to another. None the less the law makes the holder of the record title to stock a *quasi* trustee for the actual owner, and the law implies  *   *   * an obligation on the part of the actual owner to indemnify the record holder against liabilities." Thus, whenever under the New York statute a record holder who had parted with legal and beneficial ownership was compelled to pay the assessment, he was a *quasi* trustee for the actual owner and had a right of action under a contract implied by law to compel the actual owner to indemnify him. (*Broderick* v. *Aaron* [*Rice*], 264 N. Y. 368, 378.)

In that case the record owner sought, however, to hold not the actual owner who also was subject to the statutory liability, but the person to whom the record owner had sold his stock and who in turn had sold it to the person who was the actual owner when the statutory liability attached. The person sought to be charged with the obligation to indemnify the record owner was under no statutory liability and gained no benefit from the payment by the record owner to meet a duty which the record owner owed to the state. In deciding that in such circumstances the law did not imply a contract by the intermediate buyer to reimburse the seller of the stock since the obligation to indemnify arises only where one person has discharged a duty which is owed by him, but which as between himself and another should have been discharged by the other, we pointed out " no cases have been cited to us from any American jurisdiction where the obligation to indemnify a seller of stock has been extended beyond the time when the *quasi* trust relation between *seller and buyer* ceased; " and again that it is " difficult then to find any sound basis for the implication of an obligation *by the buyer to indemnify the seller* which continues after the buyer has `terminated the *quasi* trust relationship between himself and the seller " (pp. 377, 378). (Italics are new.)

The defendant upon this appeal leans heavily upon what we said and decided in that case, but here the plaintiff does not assert that a *buyer* is under an obligation to indemnify the seller after the buyer has terminated the *quasi* trust relationship between himself and the seller. Unlike the New York statute the federal statute imposes liability for the same obligation upon persons between whom there may be neither privity of contract nor privity of estate, and here the plaintiff asserts that *as between these persons* the beneficial owner of the stock at the date when liability attached should have discharged the obligation. Nothing said or decided in the case of *Broderick* v. *Aaron* (*Rice*) (*supra*) can lead to the conclusion that as between the persons who were subject to the same liability the primary

duty to discharge it does not rest upon the beneficial owner. The statute clearly indicates that Congress intended that the ultimate transferee should be under a primary duty to meet the liability, for all other persons were made subject to the liability only to the extent that such transferee failed to meet it. More important, however, is the fact, as we pointed out in the *Broderick* case, that upon well-established equitable principles beneficial ownership of stock gives rise not only to the right to receive all the benefits of ownership, but also the obligation to meet all the burdens of ownership.

Analysis in this opinion of other objections urged by the appellant and rejected by the court would serve no useful purpose.

The judgment should be affirmed, with costs.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment affirmed.