HOEHN et al. v. CREWS et al., and six
other cases.
Nos. 2870–2876.

Circuit Court of Appeals, Tenth Circuit.
July 6, 1944.

Rehearing Denied Aug. 26, 1944.

Writ of Certiorari Denied in Nos. 2874
and 2870 Nov. 13, 1944.*

See 65 S.Ct. 132, 135.

* No. 2873. Garber v. Crews, writ of certiorari granted Nov. 13, 1944. See 65 S.Ct. 132.

Nathan Scarritt and E. S. Champlin, both of Enid, Okl., for appellants in No. 2870.

Harry O. Glasser, of Enid, Okl., for appellants in Nos. 2870 and 2871.

P. C. Simons and L. E. McKnight, both of Enid, Okl., and J. B. Dudley, of Oklahoma City, Okl. (Simons, McKnight, Simons, Mitchell & McKnight, of Enid, Okl., on the brief), for appellant in No. 2872.

P. C. Simons and L. E. McKnight, both of Enid, Okl. (Simons, McKnight, Simons, Mitchell & McKnight, of Enid, Okl., on the brief), for appellants in Nos. 2873 to 2876.

Christy Russell, of Mattoon, Ill. (M. F. Priebe, of Enid, Okl., on the brief), for appellees in Nos. 2870 to 2876, inclusive.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge, delivered the opinion of the court.

This litigation had its genesis in an escrow agreement executed by the appellees with the Garber Refining Company. Under this agreement the proceeds from oil production which was in litigation were placed in escrow in the Farmers State Bank of Garber, Oklahoma, to await the outcome of the litigation. At the termination of this litigation in 1930, the escrowed funds became the property of the appellees. An investigation shortly thereafter revealed that practically all of the escrowed funds had been embezzled and dissipated. The appellees also shortly thereafter ascertained that a considerable amount of these funds had found their way into the American National Bank of Enid, Oklahoma.

In the meantime in November, 1929, the American National Bank of Enid had sold its business and transferred its assets to the First National Bank of Enid, Oklahoma. In the transaction it received $240,000 in cash from the First National Bank of Enid. On November 25, 1929, the stockholders and directors of the American National Bank by appropriate proceedings went into voluntary liquidation under 12 U.S.C.A. § 181. Prior thereto, all known claims had been paid and the $240,000 received from the First National Bank had been distributed to the stockholders. On January 20, 1930, a notice of intention to liquidate was published in The Enid Events, a newspaper published in Garber County, Oklahoma. A notice was also published in the Bond News, a newspaper published in New York City, New York. The notice published in the Enid Events did not comply with 12 U.S.C.A. § 182, in that it was not published for two full months. Both notices were published after the distribution of the $240,000 to the stockholders. The appellant directors had no part in or knowledge of any wrongful handling of the trust funds which found their way into the American National Bank, and at the time of the distribution of the $240,000 had no knowledge that such a claim existed or would be asserted against the bank.

On December 16, 1931, the appellees instituted an action against the American National Bank in the state courts of Oklahoma to recover judgment for the escrowed funds which had found their way into that bank. Judgment was entered against the bank October 29, 1937, for $249,000 and interest. The case was appealed to the Supreme Court of Oklahoma where the judgment was subsequently affirmed. On January 20, 1938, and while the state case was pending on appeal in the Supreme Court, this action was instituted against the stockholders and directors of the American National Bank in the District Court of the United States for the Northern District of Oklahoma.

In the first cause of action the appellees sought to establish a trust in the liquidation dividend of $240,000 paid to the stockholders, and sought to recover the same, less any amounts paid back by some of the stockholders. In a second cause of action they sought to enforce the double liability of the stockholders, and in a third cause of action they sought judgment against the members of the Board of Directors of the bank on the theory that they were trustees in the liquidation proceedings and

were derelict in the discharge of their duties as such trustees in the distribution of the $240,000 to the stockholders.

Judgment was entered on the first cause of action against those stockholders of whom the court had jurisdiction for the amount of the liquidation dividend they had received. On the second cause of action, judgment was entered against the stockholders for an amount sufficient to satisfy the balance of the judgment remaining unsatisfied by the judgment on the first cause of action. On the third cause of action, judgment was rendered against the directors for $188,280, and interest. It was decreed that no execution issue on this judgment until appellees had exhausted their remedy on the judgments rendered in the first and second causes of action or had shown good cause for failure so to do. Jurisdiction was retained to control the issuance of execution on these grounds.

In some cases, judgment was entered against appellants on all three causes of action. In others, judgment was entered against them on the first and second causes, while in some, judgment was entered on the first and third causes of action, and in one instance judgment was entered on the third cause of action alone. In the main, the various appeals present questions that are common to the cause of action in which the judgment was entered. In some appeals questions were presented which do not arise in the others. The questions that are common to the judgment in which they arose will be treated without reference to any particular appeal. Specific reference to appeals will be made only in those cases in which special questions are presented.

### Jurisdiction.

■ The jurisdiction of the court to entertain the first and third causes of action is challenged by various appellants. There is no diversity of citizenship, so that federal jurisdiction must be based on other grounds. The jurisdiction of the court was invoked under that part of 28 U.S.C.A. § 41(16) which reads as follows: " * * * and cases for winding up the affairs of any such bank." Is this a proceeding to wind up the affairs of a national bank? Our conclusion is that the answer must be in the affirmative. The bank had sold its assets and had ceased functioning as a banking institution. By appropriate resolution it had voted to liquidate and had appointed a liquidating agent. An attempt

had been made to publish the statutory notice required in such event. In George v. Wallace, 8 Cir., 135 F. 286, it was held that a suit against an insolvent bank which had gone into voluntary liquidation to enforce a specific lien or to enforce and judicially administer a trust previously created by contract or arising from the insolvency and liquidation proceeding was a suit arising under the laws of the United States within the jurisdiction of the Federal court, as prescribed by statute. In Richmond v. Irons, 121 U.S. 27, 49, 7 S.Ct. 788, 798, 30 L.Ed. 864, the court said:

"In the case of involuntary liquidation under the supervision of the comptroller of the currency, the receiver appointed by him is authorized and required, not only to collect and apply the proper assets of the bank to the payment of its debts, but also, so far as may be necessary, to enforce the individual liability of the shareholders. It thus appears that the enforcement of this liability is a part of the liquidation of the affairs of the bank; at least, so closely connected with it as to constitute but one continuous transaction. When, in the case of voluntary liquidation, the proceeding is instituted by one or more creditors for the benefit of all, by means of the jurisdiction of a court of equity, there seems to be no reason why the nature of the proceedings should be considered as changed. The intention of congress evidently was to provide ample and effective remedies in all the specified cases for the protection of the public and the payment of creditors, by the application of the assets of the bank and the enforcement of the liability of the stockholders. Admitting that this liability is not strictly an asset of the bank, because it could not be enforced for its benefit as a corporation nor in its name, yet it is treated as a means of creating a fund, to be applied with and in aid of the assets of the bank towards the satisfaction of its obligations. The two subjects of applying the assets of the bank and enforcing the liability of the stockholders, however otherwise distinct, are by the statute made connected parts of the whole series of transactions which constitute the liquidation of the affairs of the bank."

In Brown v. O'Keefe, 300 U.S. 598, 604, 57 S.Ct. 543, 547, 81 L.Ed. 827, it was held that:

"If the bank is in course of liquidation by a voluntary liquidator, the liability is

enforcible by a creditor or creditors, suing for themselves and for others similarly situated."

The liability to the stockholders for the liquidation dividend they had received, their liability for assessment on their stock, and the liability of the directors, if any, for dereliction of duty, were all liabilities primarily due to the bank for the benefit of creditors. Had a receiver been appointed to wind up the affairs of the bank, he could have enforced all three classes of rights for the benefit of the creditors of the bank. The action by the appellees was in the nature of a creditor's bill to enforce rights belonging to the corporation for the benefit of creditors. The action was a part of the process of winding up the affairs of the bank. The court had jurisdiction of all three causes of action under 28 U.S.C.A. § 41(16).

### Laches.

It is next urged that the first and third causes of action were barred by laches. The action against the American National Bank was instituted December 16, 1931. This action was not begun until January 20, 1938, more than six years thereafter. The applicable Oklahoma statutes of limitations provide that actions upon contracts, express or implied, not in writing, or actions upon liability created by statute other than a forfeiture or a penalty, must be begun within three years; that an action for detaining or injuring personal property, an action for injury to the rights of others, not arising on contract, an action on the ground of fraud, must be brought within two years, and that actions for relief not otherwise provided for must be brought within five years. 12 O.S.1941, § 95. These provisions control if the statutes of limitations under Oklahoma law are applicable.

■ Appellants contend that appellees could have joined the stockholders and the directors in the original action against the bank. That, not having done so, and more than five years having elapsed before they instituted this action, it is barred. We think the weight of authority is contrary to this contention. The general rule is that where a claim is for unliquidated damages or for a simple contract debt, a creditor may not maintain a creditor's bill in equity until he has reduced his claim to judgment in a court of law. The facts in Swan Land & Cattle Co. v. Frank, 148 U.S. 603, 13 S.Ct. 691, 694, 37 L.Ed. 577, are very similar to the facts in this case. The corporation there had distributed all its assets to its stockholders and had ceased doing business. The Supreme Court held that a creditor who had an unliquidated claim against the corporation could not maintain an action in the nature of a creditor's bill against the stockholders who had received the assets to subject them to the satisfaction of their claim, without first having reduced the claim against the corporation to judgment. The court said:

"We are also clearly of opinion that the court below was correct in sustaining the demurrer to the bill upon the other ground assigned,—that the complainant had not previously reduced its demand against the vendor corporations to judgment. That claim was purely legal, involving a trial at law before a jury. Until reduced to judgment at law, it could not be made the basis of relief in equity."

See, also, Hollins v. Brierfield Coal & Iron Co., 150 U.S. 371, 14 S.Ct. 127, 37 L.Ed. 1113.[1]

■ But even if it be conceded that appellees could have joined appellants in the original action against the American National Bank, they may nevertheless not prevail on this point. The disposition of this question is not controlled by the statute of limitations of Oklahoma. It must be decided upon the principle of laches. A court of equity is not bound by the statute of limitations, although it will ordinarily give effect thereto in many situations by analogy to the statute of limitations.[2]

Laches has been defined as being inexcusable delay in asserting a right; an unexcused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay. It has been said

---

[1] Oklahoma adheres to this rule. See Porter v. Rott, 116 Okl. 3, 243 P. 160; Chandler v. Colcord, 1 Okl. 260, 32 P. 330; Miller & Co. v. Melone, 11 Okl. 241, 67 P. 479, 56 L.R.A. 620; Indian Land & Trust Co. v. Owen, 63 Okl. 127, 162 P. 818.

[2] 19 Am.Jur., Equity, §§ 496, 497; Winget v. Rockwood, 8 Cir., 69 F.2d 326; City of Roswell v. Mountain States Tel. & Tel. Co., 10 Cir., 78 F.2d 379; West v. American Tel. & Tel. Co., 6 Cir., 108 F.2d 347; 30 C.J.S., Equity, § 116.

that laches differs from limitations in that limitations are concerned with the fact of delay, while laches concerns itself with the effect of delay.[3]

No absolute rule can be laid down by which to determine what constitutes laches or staleness of demand. Each case must be determined according to its own peculiar circumstances. Since laches is an equitable doctrine, its application is controlled by equitable considerations. It cannot be invoked to defeat justice and will be applied as a defense only where the enforcement of the asserted right would work injustice.[4]

It has been held that equity will not consider as laches delay due to a bona fide effort to assert a right at law, the failure of which really established the right to go into equity;[5] that delay pending other proceedings is excusable not only where the termination of such proceedings was necessary for the ascertainment of facts or the establishment of rights or liabilities involved in the latter suit, but also where the former suit had a similar object but proved unavailing; delay has been excused where plaintiff had lost time by proceeding first against another person whom he expected to be primarily liable.[6] The Supreme Court has held that the fact that the decree can do no harm to any innocent person does away with the defense of laches.[7]

These equitable considerations are especially applicable to this case. Appellants were only secondarily liable. Their duty to respond depended upon the ability of appellees to obtain a money judgment against the American National Bank. Appellees' claim was an unliquidated demand founded in a tort of a very controversial nature, as is evidenced by the fact that the judgment was sustained by the Supreme Court by a bare majority. Had they joined appellants in the original action they no doubt would have been promptly met by a demand that the proceedings against them be stayed until the primary liability of the bank was determined. That

this would have resulted is evidenced by the fact that when they instituted this action against appellants immediately after they had obtained their judgment in the District Court, appellants promptly moved for and obtained a stay of this case from the trial court until the litigation in the Supreme Court was finally determined. How, then, can it be said in all fairness that they are injured in any wise by appellees' failure to institute this action against them on their secondary liability until appellees at least had a money judgment in the state court? Under these facts, it would not only not be inequitable to refuse to apply the doctrine of laches, but it would be most inequitable to do so.

### Unclean Hands.

It is urged that the appellees were not entitled to prevail because they came into a court of equity with unclean hands. This assertion is based on the following facts: The appellees were challenging the validity of an oil and gas lease given to the Sinclair Oil and Gas Company. They were in possession of the land and were developing it for oil and gas. While the litigation was pending, they sold the oil to the Garber Refining Company under an agreement that the proceeds, less their one-eighth royalty, were to be escrowed in the Farmers State Bank of Garber to be preserved under the terms of the escrow agreement, which are not material here, and were to be delivered to them by the escrow holders if and when the litigation finally adjudicated their rights to the lease, or a settlement favorable to them was made outside of court. It appears that while these funds were escrowed with the Garber bank, the appellees obtained a release to them of some $40,000 of the funds. It is charged that this was a violation of the rights of the Garber Refining Company and that as the appellees themselves were guilty of a wrongful manipulation of these funds, they may not now urge the wrong of the Garber and Enid banks as a ground for recovery of funds

[3] 30 C.J.S., Equity, § 112; 19 Am.Jur., Equity, §§ 439, 508; D. O. Haynes & Co. v. Druggists' Circ., 2 Cir., 32 F.2d 215.

[4] City of Roswell v. Mountain States Tel. & Tel. Co., 10 Cir., 78 F.2d 379; 30 C.J.S., Equity, §§ 115, 116, 120; 19 Am.Jur., Equity, §§ 499, 509; Townsend v. Vanderwerker, 160 U.S. 171, 186, 16 S.Ct. 258, 40 L.Ed. 383; Northern Pac.

Ry. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931.

[5] Nuveen v. Board of Public Instruction, 5 Cir., 88 F.2d 175.

[6] 30 C.J.S., Equity, §§ 125, 228; Northern Pac. Ry. v. Boyd, 228 U.S. 482, 33 S. Ct. 554, 57 L.Ed. 931; Nuveen v. Board of Public Instruction, 5 Cir., 88 F.2d 175.

[7] McIntire v. Pryor, 173 U.S. 38, 19 S. Ct. 352, 43 L.Ed. 606.

that were theirs. It is not required that one who comes into a court of equity must come with spotless hands. It is not every stain that will bar the right of a petitioner to relief. The application of the maxim is based upon conscience and good faith, and is confined to misconduct in relation to the matter in litigation, so that in some manner it affects the equitable relation of the parties to the suit.[8] Aside from other considerations, the transaction which is urged as a stain on the hands of the appellees herein bears no relation whatever to the transaction out of which the liability to the American National Bank arose.

Personal Liability of the Directors.

The trial court correctly held that the directors were charged with the supervision of liquidation under 12 U.S.C. A. § 181, and that in the discharge of such duties they acted in a fiduciary capacity.[9] It follows that they would be chargeable with any loss resulting from their failure to discharge their functions in a manner required by such a relationship. What then is the duty of a director toward the bank while it is a going concern, and toward its creditors when it is in liquidation? The relationship in either event is the same, for in each case a director is a fiduciary or a trustee. Officers and directors of banks are fiduciaries and at common law the liability for their acts is such as stems from such a relationship.[10] The duty resting upon directors has been variously defined as requiring such care and diligence as an ordinarily prudent man would exercise with reference to the administration and management of such a moneyed institution.[11] It has been said that they owe a high degree of duty to the general public and stockholders.[12]

National bank directors are subject to both a statutory liability and a common law liability in the discharge of the duties of their office.[13] 12 U.S.C.A. § 182 makes it the duty of the board of directors to certify to the Comptroller of the Currency a notice of their intention to liquidate and to publish a notice for a period of two months in a newspaper published in the City of New York, and also in a newspaper published in the city or town in which the bank is located. This notice is for the benefit of creditors and of necessity must be published before the funds of the institution are distributed. Admittedly this statutory requirement was not complied with prior to the distribution of the $240,000 to the stockholders.

12 U.S.C.A. § 93 provides that any director who shall knowingly violate any of the provisions of the chapter, which includes the provision for the publication of the notice, shall be personally liable for all damage sustained in consequence of such violation.

It has been held that before a director becomes personally liable for the violation of a statutory duty, it must be established that he intentionally violated the statutory requirement. Establishment of mere negligence is not sufficient.[14] We think there is a clear absence of any showing that the directors acted wilfully or intentionally in their failure to publish this notice prior to the disbursement of these funds. The court found that they acted in good faith; none of the appellants contend that they acted in bad faith; nor is there any reason why they should have wilfully or intentionally refused to publish the required notice. None of the appellant directors knew or had reason to believe

8 See Ohio Oil Co. v. Sharp, 10 Cir., 135 F.2d 303, and cases cited therein.

9 Briggs v. Spaulding, 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662; Williams v. Fidelity Loan & Savings Co., 142 Va. 43, 128 S.E. 615, 45 A.L.R. 664; First State Bk. v. Met. Cas. Ins. Co., 125 Tex. 113, 79 S.W.2d 835, 98 A.L.R. 1256.

10 7 Am.Jur., Banks, §§ 286, 291, 825; Briggs v. Spaulding, 141 U.S. 132, 11 S. Ct. 924, 35 L.Ed. 662; Williams v. Fidelity Loan Co., 142 Va. 43, 128 S.E. 615, 45 A.L.R. 664; First State Bk. v. Met. Cas. Ins. Co., 125 Tex. 113, 79 S.W.2d 835, 98 A.L.R. 1256; Bowerman v. Hamner, 250 U.S. 504, 39 S.Ct. 549, 63 L.Ed. 1113.

11 7 Am.Jur., Banks, § 286.

12 First State Bk. v. Met. Cas. Ins. Co., 125 Tex. 113, 79 S.W.2d 835, 98 A.L.R. 1256; Seale v. Baker, 70 Tex. 283, 7 S. W. 742, 744; Briggs v. Spaulding, 141 U. S. 132, 11 S.Ct. 924, 35 L.Ed. 662; 7 C.J., § 169, p. 563; 9 C.J.S., Banks and Banking, § 132.

13 Bowerman v. Hamner, 250 U.S. 504, 510, 39 S.Ct. 549, 63 L.Ed. 1113.

14 Yates v. Jones Natl. Bank, 206 U.S. 158, 27 S.Ct. 638, 51 L.Ed. 1002; Payne v. Ostrus, 8 Cir., 50 F.2d 1039, 77 A.L. R. 531; Bowerman v. Hamner, 250 U.S. 504, 39 S.Ct. 549, 63 L.Ed. 1113.

that there was any claim outstanding against the bank.

But although the directors may not be liable for violation of their statutory duty to publish this notice prior to the distribution of these funds, they may nevertheless be liable if they violated their common law duty as directors in the liquidation of the bank. As pointed out above, at common law directors must exercise such care as ordinarily prudent men would exercise in the administration and management of such an institution, and they will be held to a high degree of care, both to the stockholders and the general public. But a director is not an insurer and is not absolutely liable for loss resulting from his inattention. He is liable only for loss that results from his negligence.[15]

Every known claim had been paid and satisfied. No one connected with the liquidation of the bank had any reason to believe that there existed any possible claim against these funds. Under these circumstances we do not believe it can be said that there was a violation of their common law duty to exercise reasonable care in paying this money to the stockholders.

But even if it be said that they were negligent in the disbursement of this money, still they are not personally liable. They are liable only for such loss as proximately results from their negligence.[16] The mere fact that the directors do not know of the existence of a claim does not relieve them from failure to publish the notice. One purpose of the notice is to permit those who have claims of which the bank has no knowledge to present them and call them to the attention of the officers. But here the appellees themselves did not know at that time that they had a claim against the American National Bank. They did not know it for considerably more than a year after the bank ceased doing business and went into liquidation. It must then be conceded that had this notice been published, this claim would not and could not have been presented. It follows that the failure of the appellees to reach this fund of $240,000 in the hands of the liquidating agent was not the proximate result of any claimed negligence on the part of the directors. Nothing that could have been done in the course of an orderly, timely liquidation would have made the fund available for the satisfaction of a claim the existence of which was unknown to any of the parties to this litigation for more than a year after the liquidation was undertaken.

### Liability Not Within 12 U.S.C.A. §§ 63, 64.

It is contended that the transaction out of which appellees' judgment arose did not constitute a "contract, debt or engagement", as those terms are used in 12 U.S.C.A. §§ 63, 64, for which stockholders become liable for assessment upon their stock. Authorities are cited in support of the contention that a judgment against a bank based on tort is not a contract, debt, or engagement of the bank within the meaning of similar statutory provisions. We deem it unnecessary to discuss these decisions, because we believe that as far as the national bank act is concerned, the question is settled by the decision of the Supreme Court in Oppenheimer v. Harriman Nat. Bank & Trust Co., 301 U.S. 206, 57 S.Ct. 719, 81 L.Ed. 1042. In that case the Supreme Court interpreted these very terms of the statute. The judgment there also sounded in tort. Involved was the right of the holders of such a judgment to have it satisfied out of assessments on stockholders' liability. The court pointed out that the statute should be reasonably construed in favor of claimants. Speaking of the terms "contracts", "debts", and "engagements", the court said:

"They are broad enough to include all pecuniary liabilities and obligations of the bank. Indeed, that is a well-recognized meaning of the word 'engagement.' Plaintiff's claim is for the money the bank fraudulently got from him and used in its business. Clearly that liability is covered by the phrase 'contracts, debts and engagements.'" (page 213 of 301 U.S., page 723 of 57 S.Ct., 81 L.Ed. 1042).

The construction for which appellants contend cannot be sustained.

### Insolvency of the Bank.

The American National Bank closed its doors as a banking institution on the even-

---

[15] Wallach v. Billings, 277 Ill. 218, 115 N.E. 382, L.R.A.1918A, 1097; Warner v. Penoyer, 2 Cir., 91 F. 587, 44 L.R.A. 761.

[16] Wallach v. Billings, 277 Ill. 218, 115 N.E. 382, L.R.A.1918A, 1097; 7 Am.Jur., Banks, §§ 294, 298; Briggs v. Spaulding, 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662.

ing of November 25, 1929. Thereafter it did no banking business. The $240,000 involved in this suit was distributed to the stockholders in December, 1929. After its distribution, the only asset the bank had was the right to receive an additional $100,000 from the First National Bank of Enid when the paper which it had guaranteed was paid, but its total liability on its guarantee of paper amounted to $138,591.48. In addition, it had outstanding appellees' claim of $249,000.

A national bank is insolvent within the meaning of the National Bank Act, 12 U.S.C.A. § 21 et seq., when it is unable to meet its obligations when they mature.[17] While appellees' claim was contingent and unknown at the time the bank closed its doors, it must be considered in determining the solvency of the bank.[18] It is quite obvious that the American National Bank was wholly unable at any time after it closed its doors on the evening of November 25, 1929, to meet its obligations and that its insolvency dates from that time. All stockholders, including appellant M. C. Garber, in No. 2783, who transferred their stock within sixty days prior to November 26, 1929, were liable for the stock assessments even though the transfers were made in good faith.

*Appeal No. 2874.*

### Liability of Heirs and Distributees of Estates of Deceased Stockholders.

C. E. Gannon, a stockholder, held 130 shares of stock on November 26, 1929. He died December 4, 1934. His estate was probated and notice to creditors to present their claims was published June 18, 1935. Appellees did not file their claim against his estate. On February 29, 1936, a final decree of distribution was entered distributing the entire estate to his wife, Kate Gannon, and his two daughters, Florence Lovell and Ruth Munger. The distribution of this estate was prior to the date on which appellees obtained their judgment against the bank in the state district court. Kate Gannon died May 24, 1941, and her estate descended to her two daughters, Florence Lovell and Ruth Munger. Appellees failed to file their claim against the estate of Kate Gannon, and have abandoned their claim against her estate.

Oklahoma adheres to the Minnesota rule,[19] which permits action by a creditor of a decedent against heirs, devisees or legatees of the estate who have received assets of the estate, to the extent of the value thereof.[20] Appellants contend, however, that appellees' claim is barred for failure to comply with 58 O.S.A. § 333. The first part of this section provides that all contracts heretofore made are forever barred if not presented against the estate within the time fixed in the notice for the presentation of claims. This portion of the statute provides that claims that are contingent or not due may be presented within one month after they become absolute. The latter part of the section deals with contracts thereafter made and provides that as to such contracts all claims thereunder, whether due, not due, or contingent, must be presented within the time fixed in the notice or they are barred. We have held that the American National Bank was insolvent after November 26, 1929. It must follow that appellees had a contingent claim against stockholders C. E. Gannon at least from the time they instituted their suit against the bank. Appellants in their appeal largely rely upon two decisions by the Supreme Court of Oklahoma to sustain their position, Fluke v. Douglas, 158 Okl. 300, 13 P.2d 210, and Timmons v. Hanna Const. Co., 176 Okl. 180, 55 P.2d 110. Both of these cases involved express contracts. Here the liability arose by operation of law and creates a relationship in the nature of an implied contract. No decision by the Supreme Court of Oklahoma is cited dealing with obligations or implied contracts arising by operation of law. A reasonable interpretation of the statutory provision would seem to indicate that it applies only to express contracts. In the absence of any aid from the Oklahoma Supreme Court, we so interpret the section.

Furthermore, there is no showing in the record when this stock was purchased. No finding was requested and none was made. In this condition of the record, we

---

[17] Smith v. Witherow, 3 Cir., 102 F.2d 638; Aycock v. Bradbury, 10 Cir., 77 F.2d 14; Kullman & Co. v. Woolley, 5 Cir., 83 F.2d 129.

[18] Scott v. Commissioner, 8 Cir., 117 F.2d 36.

[19] See Matteson v. Dent, 176 U.S. 521, 20 S.Ct. 419, 44 L.Ed. 571, for a discussion of the Minnesota rule.

[20] Chitty v. Gillett, 46 Okl. 724, 148 P. 1048, L.R.A.1916A, 1181.

cannot say that the decision of the trial court in this respect is erroneous.

That part of the judgment against D. J. Oven, N. E. Crumpacker, C. F. Randolph and R. L. Sanford for $188,280 and interest, as directors, is reversed, and the actions are remanded with directions to dismiss the third cause of action against the directors with prejudice. In all other respects, the judgment is affirmed. The costs of the appeal are equally divided between appellants and appellees.

### On Petition for Rehearing.

M. C. Garber, appellant in Number 2873, has filed a petition for rehearing in which he contends that we misinterpreted 12 U.S.C.A. § 21 et seq., as it affects the liability of one who transfers stock in a banking institution. It is contended that we established the date on which it was determined that the bank was insolvent in the sense that its liabilities exceeded its assets rather than the date on which the bank failed to meet its obligations when they matured as the date which determines the liability of one transferring stock. With this we cannot agree. We agree that it is the date on which a bank fails to meet its obligations that determines the liability of one transferring his stock. It is true that the word "insolvency" is not used in the applicable statute. The opinion could well have omitted the use of the word "insolvency." However, there can be no question as to the sense in which we used the term. We defined insolvency for the purpose of determining the liability of one transferring stock as being the failure of a bank to meet its obligations when they mature. We said: "A national bank is insolvent within the meaning of the National Bank Act, 12 U.S.C.A. § 21 et seq., when it is unable to meet its obligations when they mature." Inability to meet its obligations is the test which establishes the liability of one transferring stock. We do not understand the law to require that a claim be actually presented for payment and that payment be refused before liability attaches.

We know of no case holding to that effect. Certainly the case of Brown v. Rosenbaum, 287 N.Y. 510, 41 N.E.2d 77, 141 A.L.R. 1345, upon which appellant relies, does not so hold. It holds that where a bank is closed and a conservator is appointed, the day on which the bank was closed may determine both the date on which the rights of creditors and the liabilities of stockholders attach. In People v. Merchants' Trust Co., 187 N.Y. 293, 79 N.E. 1004, it was held that the appointment of a temporary receiver and the taking of assets by him operated to prevent the defendant from paying the claims of creditors and therefore obviated the necessity of a formal demand for payment. In Broderick v. Aaron, 268 N.Y. 260, 197 N.E. 274, 276, 103 A.L.R. 684, the superintendent of banks took possession of a bank on December 11, 1930. It did not appear that on that date the bank was actually insolvent. The court held that "none the less the closing of the bank occasioned an automatic default in the payment of its debts and liabilities."

Garber sold his stock November 14, 1929. The bank disposed of its business and closed its doors November 25, 1929, and did not function as a banking institution thereafter. It went into voluntary liquidation and appointed a liquidating agent December 20, 1929. The directors distributed the $240,000 received from the First National Bank of Enid some time in December, 1929, to the stockholders of record as of November 25. Thereafter the bank had not a single dollar with which to meet any claim. Its doors were closed and it had ceased to function as a banking institution. The presentation of a claim for payment after that would have been a mere formality. By this course of conduct the bank automatically disqualified itself from meeting any of its obligations. To hold that it was still necessary that a claim be presented and dishonored before a stockholder's liability attached would be adopting a strained construction, entirely out of line with the purpose sought to be accomplished by the statute.

The petition for rehearing is denied.